CASE NO. 24-20173

---

UNITED STATES COURT OF APPEALS
FIFTH CIRCUIT

---

TIM SPENCER,
Plaintiff – Appellant

v.

SHELL EXPLORATION & PRODUCTION COMPANY,
Defendant – Appellee

---

ON APPEAL FROM THE UNITED STATES DISTRICT COURT FOR
THE SOUTHERN DISTRICT OF TEXAS (HOUSTON DIVISION)
USDC NO. 4:22-CV-4166

---

**ORIGINAL BRIEF OF APPELLANT TIM SPENCER**

---

Respectfully submitted:

**THE LAW OFFICE OF
KEVIN S. VOGELTANZ, LLC**
Kevin S. Vogeltanz (Bar #32746)
428 W. 21st Ave. / Covington, LA 70433
Office: (504) 275-5149
Fax: (504) 910-1704
Email: vogeltanz@gmail.com
*Attorney for Plaintiff-Appellant Tim Spencer*

# I.   CERTIFICATE OF INTERESTED PERSONS

(1)   24-20173, *Spencer v. Shell Exploration*
USDC No. 4:22-CV-4166

(2)   The undersigned counsel of record certifies that the following listed persons and entities as described in the fourth sentence of Rule 28.2.1 have an interest in the outcome of this case. These representations are made in order that the judges of this court may evaluate possible disqualification or recusal.

    1.   Tim Spencer, plaintiff/appellant

    2.   Shell Exploration & Production Co., defendant/appellee

    3.   Kevin S. Vogeltanz, Esq.
Law Office of Kevin S. Vogeltanz, LLC
Attorney for Plaintiff/Appellant Tim Spencer

    4.   Gregg M. Rosenberg, Esq.
Rosenberg & Associates
Former attorney for Plaintiff/Appellant Tim Spencer

    5.   Anthony J Campiti, Esq.
Weston Mumme, Esq.
Holland & Knight
Attorneys for Defendant/Appellee Shell Exploration & Production Co.

         Respectfully submitted:

         /s/ Kevin S. Vogeltanz
         Kevin S. Vogeltanz (Bar #32746)
         428 W. 21st Ave. / Covington, LA 70433
         Office: (504) 275-5149
         Fax: (504) 910-1704
         Email: vogeltanz@gmail.com
         *Attorney for Plaintiff-Appellant Tim Spencer*

## II.   REQUEST FOR ORAL ARGUMENT

Appellant Tim Spencer respectfully requests oral argument.  The issues presented here, especially concerning the novel application of this Court's prior decision in *Bruff v. N. Miss. Health Servs, Inc.*, 244 F.3d 495, 502 (5th Cir. 2001) to the allegations of the case and to the analysis Title VII reasonable accommodations in general, seem particularly well suited to oral argument.

## III.   TABLE OF CONTENTS

I.     CERTIFICATE OF INTERESTED PERSONS ................................I

II.    REQUEST FOR ORAL ARGUMENT ............................ II

III.   TABLE OF CONTENTS ................................................III

IV.    TABLE OF AUTHORITIES .............................................V

V.     JURISDICTIONAL STATEMENT ..................................... 1

VI.    STATEMENT OF ISSUES ............................................ 4

VII.   STATEMENT OF THE CASE .......................................... 5

VIII.  SUMMARY OF THE ARGUMENT.................................... 22

IX.    ARGUMENT................................................................ 26

    A.    This Court reviews the district court's decision de novo ..... 26

    B.    Spencer should be afforded at least one chance to amend his complaint so he can plead his "best case" given his good-faith attempt to do so in his prior briefing papers ........................ 26

    C.    Even without amendment, the district court erred by dismissing plaintiff's Title VII accomodation claim ............. 34

        1.    Plaintiff sufficiently alleged failure-to-accommodate discrimination under Title VII..................................... 34

        2.    *Bruff* is inapplicable to this case, and whether SEPCO's "temporary accommodation" was reasonable or not is a question of fact not appropriate for resolution on a motion to dismiss ................................. 36

    D.    Even without amendment, the district court erred by dismissing plaintiff's Title VII retaliation claim.................. 46

        1.    Spencer's PIP was sufficiently adverse to constitute a retaliatory act............................................................. 46

2.    Plaintiff's allegations sufficiently linked his protected complaints to SEPCO's termination warning ............. 51

X.    CONCLUSION ..................................................................... 53

CERTIFICATE OF SERVICE ................................................. 55

CERTIFICATE OF COMPLIANCE ....................................... 56

## IV.   TABLE OF AUTHORITIES

### Cases

*Amanduron v. Am. Airlines*,
    416 Fed. Appx. 421 (5th Cir. 2011) .............................................. 30

*Ansonia Bd. Of Educ. V. Philbrook*,
    497 U.S. 60 (1986) .................................................................. 38, 39

*Bruff v. N. Miss. Health Servs, Inc.*,
    244 F.3d 495 (5th Cir. 2001).................................................. passim

*Burlington N. & Santa Fe Ry. Co. v. White*,
    548 U.S. 53 (2006) .......................................................................... 26

*Clark v. Amoco Prod. Co.*,
    794 F.2d 967 (5th Cir. 1986)......................................................... 38

*Coach, Inc. v. Angela's Boutique*,
    No. CIV A H-1001108, 2011 WL 2446387 (S.D. Tex. June 15,
    2011) ................................................................................................ 15

*Conley v. Gibson*,
    355 U.S. 41 (1957) ........................................................................ 27

*Dark v. Potter*,
    293 Fed. Appx. 254 (5th Cir. 2008) .............................................. 33

*Davis v. Fort Bend Cty.*,
    765 F.3d 480 (5th Cir. 2014)......................................................... 36

*E.E.O.C. v. Universal Mfg. Corp.*,
    914 F.2d 71 (5th Cir. 1990).......................................................... 39

*Feist v. Louisiana, Dep't of Justice, Office of the Atty. Gen.*,
    730 F.3d 450 (5th Cir. 2013).................................................. 26, 53

*Great Plains Tr. Co. v. Morgan Stanley Dean Witter & Co.*,
    313 F.3d 305 (5th Cir. 2002) ..................................................... 23, 31

*Griggs v. Hinds Junior Coll.*,
    563 F.2d 179 (5th Cir. 1977) .......................................................... 23

*Griggs v. Hinds Junior Coll.*,
    563 F.2d 179, 180 (5th Cir. 1977) .................................................. 32

*Groff v. DeJoy*,
    600 U.S. 447 (2023) ........................................................................ 45

*Hart v. Bayer Corp.*,
    199 F.3d 239 (5th Cir. 2000) .......................................................... 31

*Hinton v. Amazon.com.dedc, LLC*,
    72 F.Supp.3d 685 (S.D. Miss. 2014) .............................................. 32

*In re Katrina Canal Breaches Litig.*,
    495 F.3d 191 (5th Cir. 2007) .......................................................... 27

*Jackson v. Honeywell Int'l, Inc.*,
    601 F. App'x 280 (5th Cir. 2015) ............................................... 12, 25

*Joseph v. Bach & Wasserman, L.L.C.*,
    487 Fed. Appx. 173 (5th Cir. 2012) ............................................... 29

*Long v. Eastfield Coll.*,
    88 F.3d 300 (5th Cir. 1996) ........................................................... 53

*Porter v. Shineski*,
    650 F.Supp.2d 565 (E.D. La. 2009) ............................................... 52

*Ramming v. United States*,
    281 F.3d 158 (5th Cir. 2001) .......................................................... 27

*Sentry Ins. v. Morgan*,
    101 F.4th 396 (5th Cir. 2024) ........................................................ 35

*Sherrod v. American Airlines, Inc.*,
  132 F.3d 1112 (5th Cir. 1998) ........................................................ 52

*Sullivan v. Leor Energy, LLC*,
  600 F.3d 542 (5th Cir. 2008) ......................................................... 28

*Tabura v. Kellogg USA*,
  880 F.3d 544 (10th Cir. 2018) ....................................................... 45

*U.S. Enercorp, Ltd. v. SDC Montana Bakken Expl., LLC*,
  966 F.Supp.2d 690 (W.D. Tex. 2013) ...................................... 38, 40

## Statutes

28 U.S.C. § 1291 ................................................................................. 3

28 U.S.C. § 1331 ................................................................................. 3

42 U.S.C. § 2000e(j) .......................................................................... 39

42 U.S.C. § 2000e-3 ........................................................................... 3

42 U.S.C. §§ 2000e-2 ......................................................................... 3

## <u>Rules</u>

Fed. R. Civ. P. 12 .............................................................................. 27

Fed. R. Civ. P. 15 .............................................................................. 31

## V.    JURISDICTIONAL STATEMENT

This is a Title VII employment discrimination and retaliation case. The plaintiff, Tim Spencer, was previously employed by Shell Exploration & Production Company ("SEPCO") as a Mechanical Advisor. In November 2021, another Shell entity – Shell Offshore Inc. (Shell) – instituted a new policy requiring all Gulf of Mexico employees (including SEPCO employees) to receive vaccination against the SARS-CoV-2 virus that causes COVID-19.

Spencer's religious beliefs prohibited him from receiving the vaccination, and in December 2021 he timely submitted a request for reasonable accommodation to be exempted from Shell's vaccination rule. Shell denied Spencer's request and, in lieu of immediate termination, gave him a period of time to find another job within SEPCO that didn't require vaccination.  Spencer couldn't find any available positions and, on April 5, 2022, filed a Charge of Discrimination with the EEOC asserting that his management failed to reasonably accommodate his religious beliefs in the matter (Charge No. 460-2022-01898).

On April 21, 2022, just two weeks after Spencer filed his Charge, his SEPCO management placed him on a pretextual performance

improvement plan alleging he was a poor performer, placing him at risk for termination for cause. Two weeks after that, on May 3, 2022, Spencer's management told him via email that his employment was scheduled to be terminated effective July 18 unless he complied with Shell's vaccination rule or found another job. Sensing retaliation, Spencer amended his Charge on May 5, 2022 and asserted an additional claim of retaliation arising from these acts.

Spencer never found any other available SEPCO job, and on July 10, 2022 took a full time position with significantly less pay, less prestige, and a significantly longer commute working for another Shell entity called Shell Pipeline Company ("SPLC") based out of its Houma, Louisiana office. Spencer remains employed and working for SPLC today.

On October 13, 2022, the EEOC issued Spencer his Notice of Right to Sue in the matter. Spencer timely filed his federal complaint on December 1, 2022 in the U.S. District Court for the Southern District of Texas (Houston Division), No. 4:22-cv-4166. Defendant timely waived service of summons on January 10, 2023. The district court possessed federal-question, subject matter jurisdiction over the matter pursuant to

28 U.S.C. § 1331 and 42 U.S.C. §§ 2000e-2 and 2000e-3 (Title VII's anti-discrimination and anti-retaliation provisions). Defendant didn't contest personal jurisdiction or venue in the matter.

On April 19, 2023, Defendant SEPCO filed a motion to dismiss all of Spencer's claims under Federal Rule 12(b)(6). Spencer filed an opposition brief. SEPCO filed a reply brief.

On March 25, 2024, the district court issued a written order with reasons granting SEPCO's motion and dismissing all of Spencer's claims with prejudice. Although the Court did not issue a separate final judgment, its written order had the effect of adjudicating and dismissing all claims by all parties in the case.

On April 23, 2024, Spencer notified the district court he had disengaged from his prior attorney, Gregg Rosenberg, and intended to proceed *pro se*. That same day, Spencer filed his *pro se* notice of appeal seeking review of the district court's March 25, 2024 "Final Dismissal Order." Accordingly, this Court has jurisdiction over this appeal pursuant to 28 U.S.C. § 1291 because the district court's order is a final decision of the United States District Court that resolved all claims in the case.

## VI.   STATEMENT OF ISSUES

1.     Did the district court err when it dismissed plaintiff's complaint with prejudice under Rule 12(b)(6) without first affording him at least one opportunity to amend so he could state his "best case" in the matter, especially given that plaintiff's lawyer did submit new, material allegations of fact and exhibits in response to SEPCO's motion to dismiss?

2.     On the merits, regardless of any amendment, did the district court err when it dismissed plaintiff's Title VII failure-to-accommodate claim?

3.     On the merits, regardless of any amendment, the district court err when it dismissed plaintiff's Title VII retaliation claim?

## VII.  STATEMENT OF THE CASE

Plaintiff/Appellant Tim Spencer lives in Texas and works in the oil and gas exploration industry.  ROA.5.  Shell Exploration and Production Company ("SEPCO") hired Tim Spencer in 2008.  ROA.7.  SEPCO later promoted Spencer to the position of "Mechanical Advisor."  ROA.7.  Spencer served in that position until he resigned his employment in lieu of termination in 2022.

In September 2021, SEPCO organizationally transferred Spencer to what it describes as its *Whale* project.  ROA.7.  SEPCO had commissioned the construction of a new floating production unit called *Whale*, and Spencer began working on various remote projects related to *Whale* while the unit was being built oversees in Singapore.[1]  Because *Whale* was under construction, Spencer split his time between working from home in Texas and at a SEPCO office in Robert, Louisiana called

---

[1]  This allegation is admittedly new, but part of the relief appellant seeks in this appeal is to reverse dismissal of his case and remand to the district court with instructions to permit Spencer to amend his complaint so he can plead his "best case."  Accordingly, a few of the facts included in the Statement of the Case represent new but related allegations that Spencer is proffering for the Court's consideration as it decides whether to grant him this relief.  Each of these proffered facts is set out by footnote.  A full list of these proffered facts is set out at the end of the Statement of the Case at pages 17-19.  **All other facts appearing in the Statement of the Case are designated by reference to the Record on Appeal.**

the "Robert Training Facility." ROA.112. Spencer wasn't required to travel oversees to *Whale* while it was being constructed.[2]

In November 2021, during the COVID-19 pandemic, Shell Offshore, Inc. ("Shell") instituted a new policy requiring SEPCO and other Shell employees who were required to travel to or access Gulf of Mexico-based "Offshore Sites" to receive full vaccination against COVID-19 as a condition of their continued employment. ROA.83-84. Shell didn't require its onshore workforce to underdo mandatory vaccination. ROA.8. Apparently, however, Shell organizationally included the *Whale* project among its Gulf of Mexico "Offshore Sites" even while it was being constructed, so SEPCO informed Spencer that he had to undergo vaccination despite the fact he worked onshore at home and the Robert Training Facility. ROA.8, 83-84.

Spencer's sincerely held religious beliefs prevented him from receiving the COVID-19 vaccine, and on December 16, 2021 he submitted a request for reasonable accommodation. ROA.7. Spencer's specific request was to be exempted from the vaccination requirement so he could

---

[2] This allegation is new and is proffered for the Court's consideration. *See* note 1, *supra.*

continue working his same job, in the same way, between his home and the Robert Training Facility.  ROA.7.

On January 14, 2022, the company emailed Spencer what appears to be a form letter and indicated his request for accommodation had been denied.  ROA.7-8, 87.  The email claimed allowing Spencer to remain unvaccinated would cause the company an "undue hardship in the form of safety and costs related to the spread of COVID-19 on our offshore assets[.]"  ROA.87.  Shell's email didn't explain why.  Instead, Shell gave Spencer what it described as a "temporary accommodation" of 60 days to continue working while attempting to find another job within SEPCO that did not require mandatory vaccination.  ROA.87.  After this 60-day period, Spencer was informed he would begin accruing unexcused absences and face termination under SEPCO's attendance policy.  ROA.87.

Despite his search, Spencer couldn't find any other available SEPCO jobs for which he was qualified during the 60-day period.[3]  So, on April 5, 2023, Spencer filed a Charge of Discrimination with the EEOC

---

[3]  This allegation is new and is proffered for the Court's consideration.  *See* note 1, *supra*.

asserting that Shell had failed to reasonably accommodate his religious beliefs in the matter.  ROA.6, 78.

Two weeks later, on April 21, 2022, Spencer's SEPCO manager placed him on a performance improvement plan for "underperformance over time in three key areas."  ROA.8, 88-93.  The PIP faulted Spencer for (1) failing to follow company procedures, (2) failing to meet expectations, and (3) poor teamwork, collaboration, and interpersonal behaviors.  ROA.88.  The PIP indicated failure to successfully complete the program could result in termination.  ROA.89.  However, prior to being placed on the PIP, Spencer had a "clear disciplinary record."  ROA.120.  Spencer denies he engaged in any poor performance and alleges the PIP was merely pretext to threaten and retaliate against him for filing his Charge of Discrimination two weeks earlier.  ROA.120.

Two weeks after that, on May 3, 2022, one of Spencer's SEPCO managers named Lautrice McLendon issued Spencer a written termination warning indicating Spencer was scheduled for termination effective July 18 unless he underwent vaccination or found another job.  ROA.8, 94.

Two days after McLendon issued Spencer the termination warning, Spencer amended his EEOC Charge and asserted a second claim of retaliation – specifically asserting the PIP and termination warnings were pretextual threats.[4]  ROA.6, 80.

Ultimately, Spencer couldn't find any other available SEPCO job before July 18.[5]  Instead, he resigned to take a much lower paying job with Shell Pipeline Company ("SPLC").  ROA.111, 114, 115, 116, 119, 123, 125-26.  The new job paid Spencer $30,000 less per year in salary, ROA.125-26, and required Spencer to drive five more hours each way to work at SPLC's office in Houma, Louisiana for his 14/14 rotations compared to his prior job at SEPCO at the Robert Training Facility.[6]

Spencer began working for SPLC on July 10, 2022.  ROA.123.  SPLC had a mandatory COVID-19 vaccination policy, but SPLC granted Spencer's request for accommodation and simply exempted him from the

---

[4]  In plaintiff's original complaint, he alleged his SEPCO managers engaged in other retaliatory acts, such as texting him inappropriately, demanding Spencer submit various sorts of paperwork, and challenging Spencer's use of time-off leave.  *See* ROA.8.  On appeal, plaintiff doesn't argue these acts were retaliatory.  Here, Spencer only alleges that SEPCO's PIP dated April 21, 2022 and termination warning dated May 3, 2022 constituted retaliatory acts.

[5]  This allegation is new and is proffered for the Court's consideration.  *See* note 1, *supra*.

[6]  This allegation is new and is proffered for the Court's consideration.  *See* note 1, *supra*.

rule.[7]  Amazingly, Spencer's first assignment with SPLC was to travel by SEPCO helicopter to a SEPCO offshore unit in the Gulf of Mexico along with several other SEPCO and SPLC employees.  SEPCO didn't require Spencer to be vaccinated to travel on its helicopter, with its people, or work on its offshore platform.  ROA.113-114.  If this doesn't make any sense to the Court, it doesn't make any sense to Spencer either.  Spencer continues working for SPLC today, but at a less prestigious job, earning far less income, with a five-hour-longer commute.

\* \* \*

Spencer hired a Texas attorney named Gregg Rosenberg to prosecute his Title VII case.  Rosenberg filed Spencer's federal lawsuit against SEPCO on December 1, 2022 in the U.S. District Court for the Southern District of Texas (Houston Division).  ROA.5-14.  SEPCO filed a motion to dismiss under Rule 12(b)(6).  ROA.58-77.  Despite the Rule 12 procedural posture, SEPCO submitted seven exhibits (A through G) in support of its fact-based arguments.  ROA.78-94.  These included Spencer's Charge of Discrimination, a Shell policy document concerning its COVID-19 vaccination mandate, Shell's email to Spencer denying his

---

[7]  This allegation is new and is proffered for the Court's consideration.  *See* note 1, *supra.*

request for accommodation, the PIP document SEPCO issued to Spencer, and McLendon's termination warning to Spencer. *Id.*

On brief to the district court, concerning its alleged failure to accommodate Spencer's religious objection, SEPCO argued that its "temporary accommodation" offering a 60-day window to find another job "reasonably accommodated" Spencer as a matter of law, citing to this Court's decision in *Bruff v. N. Miss. Health Servs, Inc.*, 244 F.3d 495, 502 (5th Cir. 2001). ROA.70-72. SEPCO argued that under Title VII it was free to offer any accommodation to Spencer it liked, and that's what it chose to do. *Id.*

Concerning retaliation, SEPCO first argued to the district court that McLendon's termination warning to Spencer wasn't "retaliatory" because SEPCO had always been upfront with Spencer that it intended to fire him unless he submitted to vaccination or found another job. ROA.74-75. SEPCO next argued a PIP isn't retaliatory as a matter of law if it's either issued for "colorable" reasons or if the PIP didn't actually dissuade the employee from further complaints, citing to a portion of this Court's unpublished decision in *Jackson v. Honeywell Int'l, Inc.*, 601 F. App'x 280, 286 (5th Cir. 2015). ROA.75-76.

Spencer, through his attorney, filed an opposition brief. ROA.108-121. Following SEPCO's lead, Spencer's lawyer also submitted two fact-based exhibits. First, an email from Spencer's SEPCO manager asking for Spencer's PIP to be successfully closed out early because "he transitioned to SPLC on July 10th." ROA.122-23. Second, two pay related documents (one from SEPCO, one from SPLC) proving up Spencer's allegation about his reduction in pay when he resigned to take the SPLC job in lieu of termination from SEPCO. ROA.124-126.

On brief to the district court, Spencer's lawyer also clarified some allegations previously alleged in plaintiff's complaint while asserting some related, but admittedly new, facts critical to plaintiff's case. Specifically, Spencer's lawyer clarified that Spencer was working onshore while employed by SEPCO – both at his home and at the Robert Training Center – and so it wasn't clear why Shell's vaccination mandate applied to Spencer at all. *Compare* ROA.8 *with* ROA.112-113. Spencer's lawyer also more clearly alleged that Spencer's PIP was both baselessly issued and then closed out early only after Spencer agreed to resign and take the job at SPLC. ROA.113, 120, 123. Spencer's lawyer alleged Spencer had no prior discipline before SEPCO issued him the PIP and, instead,

had a performance record that placed him in the top 10% of his pay grade among his peers.    ROA.120.    Spencer's lawyer also alleged that after Spencer resigned, SEPCO (referred to as "Shell" in the brief) allowed him to fly on a SEPCO helicopter, offshore, with SEPCO's employees, without vaccination – a seeming violation of SEPCO's own vaccination policy. ROA.113-14.

However, despite Spencer's lawyer raising (or clarifying) these important allegations in his opposition briefing, he admittedly didn't ask the Court for leave to file an amended complaint to fully integrate them.

Otherwise, on the legal merits, Spencer's lawyer only weakly countered SEPCO's arguments concerning the reasonableness of the accommodation it offered, ROA.116, and Spencer's lawyer didn't really say anything at all about impact of this Court's decision in *Bruff*. Spencer's lawyer did a better job on retaliation, more forcefully arguing that whether a PIP constitutes a retaliatory act depends on the facts of the case, and that in this case plaintiff's allegations suggested the PIP was, in fact, pretextually issued for a retaliatory purpose. ROA.118-20.

SEPCO filed a reply.    ROA.127-131.    Seeing that Spencer's lawyer had begun alleging the sorts of facts that would probably warrant

denying the motion to dismiss at least until discovery was completed, SEPCO's lead-out argument was to ask the district court to disregard the new allegations contained in plaintiff's briefing papers because Spencer's lawyer hadn't explicitly requested leave to amend.  ROA.127.  SEPCO's remaining arguments were typical of what they had argued in their original brief.

\* \* \*

The district court sided with SEPCO and dismissed all of Spencer's Title VII claims.  ROA.135-147.  The district court noted Spencer's opposition brief included facts not previously alleged in his complaint, including, specifically, that Spencer's job at SEPCO was an onshore job based out of the Robert Training Facility in Louisiana.  *See, e.g.*, ROA.136 at n.1.  The district court noted these sorts of facts "are not incorporated into the original pleadings," citing *Coach, Inc. v. Angela's Boutique*, No. CIV A H-1001108, 2011 WL 2446387, at \*2 (S.D. Tex. June 15, 2011), but the Court also noted in at least one instance that it would have granted SEPCO's motion anyway even if the Court had considered the new allegations.  *Id.*

Other times, however, the district court seemed to indicate it refused to consider at least some of these additional facts, including that Spencer was forced to resign from SEPCO because management failed to accommodate his religious objection or his allegations concerning his new work at SPLC. ROA.141.

Concerning Title VII accommodation, the district court accepted SEPCO's argument that this Court's decision in *Bruff* was conclusive as a matter of law. ROA.139-140. The district court held "Under *Bruff*, which held that granting an employee thirty days to seek a transfer was a sufficient accommodation, Defendant granting Plaintiff approximately seven months to find an alternative position within the company was a reasonable accommodation under Title VII." ROA.140. Here again, however, the district court appeared to recognize the impact of Spencer's allegation that in reality he was forced to ultimately resign to take a job with SPLC to avoid termination, but then the district court refused to consider the fact because it was not alleged in plaintiff's complaint:

According to documents attached to the Response, Plaintiff began working for SPLC on July 10, 2022. Plaintiff does not allege, either in the Complaint or his Response, that he was ever terminated. "New facts submitted in response to a motion to dismiss to defeat the motion are not incorporated into the original pleadings." **Thus, the Court finds that Plaintiff's arguments concerning his allegedly new position at SPLC do not remedy the fact that, according to the facts alleged in the Complaint, Defendant granted Plaintiff a reasonable accommodation under Title VII.** Accordingly, Plaintiff's religious discrimination claim is dismissed.

ROA.141 (internal citations omitted).

Concerning retaliation, the district court again accepted SEPCO's argument that McLendon's termination warning wasn't retaliatory because SEPCO had always planned to fire Spencer under Shell's vaccination policy. ROA.142-43. The Court also accepted SEPCO's argument that a PIP isn't retaliatory as a matter of law when it's issued for "colorable" reasons or when it doesn't actually dissuade the employee from further complaints. ROA.146-47. The Court wrote:

Thus, given that Plaintiff does not plausibly allege that no colorable grounds existed for the PIP and he continued to engage in protected activity, Plaintiff has not sufficiently alleged that the PIP is a materially adverse employment action. The retaliation claim must therefore be dismissed.

ROA.147 (internal citations omitted).

The district court's order concluded by granting SEPCO's motion to dismiss, and the court did dismiss those claims with prejudice: "Plaintiff's claims are DISMISSED WITH PREJUDICE." ROA.147.

The district court never entered a separate final judgment in the matter, but its order had the effect of fully resolving and dismissing with prejudice all claims by all parties in the case.

* * *

The district court issued its order on March 25, 2024. ROA.147. On April 23, 2024, Spencer filed a "designation of pro se status" informing the Court he had disengaged from his Texas attorney and intended to proceed on his own. ROA.148-49. That same day, Spencer timely filed his notice of appeal seeking review of the district court's order of dismissal. ROA.150-51.

On June 4, 2024, Spencer hired undersigned counsel to represent him in this appeal. Doc. 12 at 4. Counsel filed his appearance on June 6, 2024. *See* Doc. 12 at 7.

* * *

Part of appellant's argument here is that the district court should have allowed Spencer at least one opportunity to amend his complaint

before dismissing his case with prejudice, particularly given that the district court recognized Spencer's attorney was trying to allege important facts in plaintiff's opposition brief that the district court then declined to consider. Appellant asks this Court, at least in the alternative, to reverse dismissal of Spencer's case and remand the matter back to the district court with instructions to permit Spencer one opportunity to amend his lawsuit so he can present his "best case."

To help the Court consider this request, appellant proffers the following list of material allegations he will include in his amended complaint if the relief is granted. Some of these are simply clarifications of facts Spencer, through his lawyer, previously made or tried to make in his complaint and briefing papers. Others are related to those facts but are themselves new:

1. SEPCO transferred Spencer to its *Whale* project in September 2021.

2. SEPCO commissioned the construction of its *Whale* floating production unit oversees in Singapore. *Whale* wasn't completed until 2024. By then Shell had rescinded its COVID-19 vaccination policy for its Gulf of Mexico operations.

3. After transitioning to the *Whale* project in September 2021, Spencer's job did not require him to fly offshore or oversees while *Whale* was being constructed.

4.   For the entire time Spencer was assigned to SEPCO's *Whale* project, he worked on shore splitting time between his home in Texas and SEPCO's "Robert Training Facility" in Robert, Louisiana.

5.   Shell imposed its COVID-19 vaccination policy in November 2021. Shell required all employees flying to or accessing its Gulf of Mexico "Offshore Units" to receive vaccination by January 2022 as a condition of their continued employment.  At the time, Shell did not require its onshore employees, or its employees who were not required to fly to or access its Offshore Units, to submit to mandatory vaccination.

6.   Shell indicated that it refused to accommodate Spencer because doing so would cause it an "undue burden," but Shell provided no evidence to support that claim.  Prior to the public availability of COVID-19 vaccines in the United States, Shell required Spencer to continue working his same job, the same way, at both home and at the Robert Training Facility, following the same non-vaccine countermeasures that Shell previously determined did not cause it any undue burden and were safe enough for the workplace.  In reality, accommodating Spencer and allowing to continue working his onshore job without vaccination imposed zero burden on Shell's business.

7.   Spencer would have undergone any non-vaccination safety measures SEPCO requested had it accommodated his religious objection.  Spencer would have agreed to socially distance at work, quarantine himself before rotating back to work, wear approved face coverings, periodically test for COVID-19 at his own expense as often as SEPCO liked, and engage in any other non-vaccination safety precautions. SEPCO requested.  These mitigation efforts would have cost SEPCO nothing and would have ensured that, for all practical purposes, Spencer would have been one of SEPCO's safest employees for the duration of the pandemic.

8. On December 16, 2021, Spencer timely submitted his request for reasonable accommodation based on his sincerely held religious belief and objection to Shell's vaccination policy. Spencer asked to be accommodated by allowing him to continue working onshore at his home and the Robert Training Facility without vaccination as was the current status quo.

9. Spencer tried earnestly to find another job within SEPCO after management denied his request for accommodation. Spencer never found a single job for which he was qualified during the approximately six-month period he looked prior to resigning in lieu of termination. Those jobs didn't exist.

10. In reality, SEPCO's temporary accommodation was a sham. There were no "other jobs" available at the time. SEPCO's "accommodation" was simply pretext for eventually firing or forcing the resignation of SEPCO's employees who were religious objectors while feigning compliance with Title VII's accommodation mandate.

11. Spencer's management at SEPCO did not give him any indication of allegedly poor performance until it placed him on a PIP two weeks after Spencer filed his EEOC Charge of Discrimination. Spencer denies he engaged in the poor performance alleged in the PIP. Spencer was an excellent employee. The PIP – which carried with it the threat of termination – was issued to retaliate against Spencer for filing his Charge of Discrimination.

12. Spencer's management at SEPCO rescinded the PIP five days after Spencer started his new job at SPLC on July 15, 2022, and SEPCO management admitted they did so because Spencer had taken a job at SPLC.

13. Spencer's management at SEPCO did not warn him of a specific termination date for failing to comply with Shell's vaccination policy (in this case, July 18, 2022) until after Spencer filed his EEOC Charge of Discrimination in the case. Prior to that time, SEPCO generally warned about possible termination, but Lautrice

McLendon's email dated May 3, 2022 first crystalized that threat with Spencer's actual, planned, termination date.

14.  Spencer's new job at SPLC pays significantly less salary than his old job at SEPCO.  Spencer's new job is less prestigious than his old job.  Spencer's new job is based out of Houma, Louisiana and requires him to commute approximately five more hours to work each way during his work rotations then at his old SEPCO job.

15.  SPLC had a mandatory COVID-19 vaccination policy, but SPLC granted Spencer's request for accommodation and simply exempted him from the rule.

16.  After Spencer began working for SPLC, his job duties often required him to fly offshore to different SEPCO facilities in the Gulf of Mexico.  SEPCO permitted Spencer to fly on SEPCO helicopters, with SEPCO employees, to SEPCO offshore facilities without vaccination.

17.  After litigation began in this case, SEPCO informed Spencer it was not willing to re-offer him his old job back aboard *Whale* because he resigned his employment in lieu of termination while on an active PIP.  In other words, beyond merely carrying a threat of termination at the time, SEPCO's pretextually issued PIP has caused (and continues to cause) a material disadvantage to Spencer.

## VIII. SUMMARY OF THE ARGUMENT

Spencer raises three arguments on appeal.

First, Spencer argues he should be permitted at least one opportunity to return to district court and amend his complaint so he can allege his "best case" and respond to the court's dismissal by alleging the allegations proffered earlier in this brief and in his original opposition brief to SEPCO's motion to dismiss.

While it's true Spencer's lawyer didn't explicitly ask for leave to amend, and while it's true the district court has no obligation to necessarily offer leave absent a request, this Court has often said a district court ought to "afford plaintiffs at least one opportunity to cure pleading deficiencies before dismissing a case, unless it is clear that the defects are incurable or the plaintiffs advise the court that they are unwilling to unable to amend in a manner that will avoid dismissal." *Great Plains Tr. Co. v. Morgan Stanley Dean Witter & Co.*, 313 F.3d 305, 329 (5th Cir. 2002); *accord Griggs v. Hinds Junior Coll.*, 563 F.2d 179, 180 (5th Cir. 1977) ("Granting leave to amend is especially appropriate, in cases such as this, when the trial court has dismissed the complaint for failure to state a claim.").

Here, it certainly seems like Spencer has the ability to allege sufficient facts to state viable Title VII claims in the case, and given the attempt by Spencer's lawyer to marshal those sorts of facts in response to SEPCO's original motion to dismiss, the equities seem to favor granting Spencer his one chance to amend.

Second, Spencer argues the district court was wrong to rely on this Court's decision in *Bruff v. N. Miss. Health Servs, Inc.*, 244 F.3d 495 (5th Cir. 2001) to dismiss his Title VII failure-to-accommodate claim. In reality, the facts of *Bruff* determined after discovery and trial on the merits have virtually zero resemblance to the factual allegations in this case in the context of a Rule 12 motion to dismiss, and SEPCO's argument that it "reasonably accommodated" Spencer's religious beliefs as a matter of law is really a fact-based argument not generally appropriate for resolution on a Rule 12 motion.

Further, SEPCO's broad argument that *Bruff* stands for the proposition that any employer can seemingly eschew their obligations under Title VII to reasonably accommodate an employee's religious beliefs by simply demanding the employee find another job or face termination flies in the face of both the remedial purpose of Title VII and

the nature of the employer's affirmative defense to prove no reasonable accommodation existed that would not have caused an undue burden to its entire business. Instead, Spencer argues he's plausibly alleged SEPCO failed to reasonably accommodate his religious objection to Shell's COVID-19 policy.

Third, Spencer argues the district court was wrong to dismiss his Title VII retaliation claim. On one hand, the district court erred by relying on a portion of this Court's holding in *Jackson v. Honeywell Int'l, Inc.*, 601 F. App'x 280, 286 (5th Cir. 2015) to support the idea that the PIP SEPCO issued to Spencer wasn't retaliatory as a matter of law. *Jackson* was an unpublished opinion that SEPCO and the district court used for the proposition that a PIP isn't retaliatory when its either issued for colorable reasons or when it doesn't actually dissuade the employee from making additional complaints.

Firstly, Spencer alleged the PIP was baselessly issued and he did nothing wrong. The district court should not have resolved that factual dispute against him on a Rule 12(b)(6) motion to dismiss. Secondly, as the Supreme Court (and this Court) has often held, the test of adversity in the Title VII context is whether the act "well might have dissuaded a

reasonable worker from making or supporting a charge of discrimination." *Burlington N. & Santa Fe Ry. Co. v. White*, 548 U.S. 53, 68 (2006). Spencer's allegations concerning the PIP – which carried with it the threat of termination – certainly would have dissuaded a reasonable employee from complaining further.

On the other hand, the district court erred by concluding Spencer's allegations didn't plausibly show SEPCO issued him its May 3, 2022 termination warning because of Spencer's prior EEOC Charge of Discrimination. Spencer filed his Charge less than one month before SEPCO issued him the termination warning. This Circuit has held "a plaintiff alleging retaliation may satisfy the causal connection element by showing '[c]lose timing between an employee's protected activity and an adverse action against him.'" *Feist v. Louisiana, Dep't of Justice, Office of the Atty. Gen.*, 730 F.3d 450, 454 (5th Cir. 2013). A "time lapse of up to four months may be sufficiently close" to demonstrate *prima facie* causation. *Id.* That's the case here. Overall, in the total context in SEPCO issued the warning, Spencer plausibly alleged – at least in the alternative – that SEPCO issued him the termination warning to retaliate against him for filing his Charge of Discrimination.

## IX.  ARGUMENT

### A.  This Court reviews the district court's decision de novo

This Court reviews the district court's dismissal of plaintiff's complaint under Rule 12(b)(6) *de novo*, applying the same standard applicable to the district court.  *Ramming v. United States*, 281 F.3d 158, 161 (5th Cir. 2001) (so holding).  Under Rule 12, the "court accepts all well-pleaded facts as true, viewing them in the light most favorable to the plaintiff."  *In re Katrina Canal Breaches Litig.*, 495 F.3d 191, 205 (5th Cir. 2007) (internal quotations omitted).  "A complaint should not be dismissed for failure to state a claim unless it appears beyond doubt that the plaintiff can prove no set of facts in support of his claim which would entitle him to relief."  *Ramming*, 281 F.3d at 161, *citing Conley v. Gibson*, 355 U.S. 41, 45-46 (1957).

### B.  Spencer should be afforded at least one chance to amend his complaint so he can plead his "best case" given his good-faith attempt to do so in his prior briefing papers

Cards on the table, Spencer's former lawyer didn't draft the best Title VII complaint Spencer's case deserved.  SEPCO then took some liberties by attaching seven fact-based exhibits to help it form its dismissal argument.  Given that these documents are at least impliedly

referenced in plaintiff's complaint, appellant doesn't dicker with SEPCO attaching them per se, *see Sullivan v. Leor Energy, LLC*, 600 F.3d 542 (5th Cir. 2008), but appellant does note that from the start of litigation both defendant and plaintiff began supplementing the record with additional documents and facts they thought best represented their case. In plaintiff's opposition brief, Spencer's lawyer clearly responded to SEPCO's arguments to dismiss by setting out and relying upon additional documents and factual allegations he thought necessary to support Spencer's case.

In turn, it's not clear how many of these additional facts the district court considered or relied upon when it granted SEPCO's motion to dismiss. *Compare* "However, even considering these additional facts, the Court finds that Defendant's Motion should be granted[,]" ROA.136 at n.2, *with* "the Court finds that Plaintiff's arguments concerning his allegedly new position at SPLC do not remedy the fact that, according to the facts alleged in the Complaint, Defendant granted Plaintiff a reasonable accommodation under Title VII." ROA.141.

What seems unquestionably true about plaintiff's complaint when compared to the opposition brief filed by Spencer's lawyer is that plaintiff

had additional, important, factual allegations to plead in support of his best case, and it's not clear from the record whether these new facts might have persuaded the district court in plaintiff's favor had leave to amend been granted. Indeed, it's not clear whether SEPCO would have even filed a second motion to dismiss had plaintiff been given the chance to file an amended complaint.

Yes, it's true, although Spencer's lawyer sought to rely on additional facts to support his opposition brief, he didn't explicitly ask the district court for leave to amend to incorporate those facts into plaintiff's complaint or to add any others. Typically, a plaintiff must ask for leave to amend rather than waiting for the district court to simply offer it up. *Joseph v. Bach & Wasserman, L.L.C.*, 487 Fed. Appx. 173, 178 (5th Cir. 2012). As this Court noted in *Joseph*:

> Finally, Plaintiffs–Appellants argue that the district court should have permitted them to amend their complaint, rather than dismissing their case with prejudice. However, they never requested leave to amend from the district court, nor have they indicated what they would add to their complaint if allowed to amend. We therefore find that the district court properly dismissed the RICO claim without giving the Plaintiffs–Appellants the opportunity to amend their complaint.

*Id.* at 178.  Of course, had Spencer been proceeding pro se at the time, this Court has ruled a district court generally commits reversable error by dismissing a complaint, even absent an explicit request to amend, without giving the pro se plaintiff at least once chance to amend to state his "best case." *Amanduron v. Am. Airlines*, 416 Fed. Appx. 421, 423 (5th Cir. 2011) ("the record shows that the district court did not provide Amanduron an opportunity to amend her pro se complaint prior to the district court's dismissal of it.  Thus, the district court erred in failing to provide an opportunity for Amanduron to attempt to successfully state a claim in an amended complaint.").

Spencer wasn't acting pro se, of course, he was admittedly represented by his former lawyer at the time.  The question here is whether the district court at the time, or this Court now on review, ought to allow Spencer – who did file a pro se designation with the district court after the dismissal of his case – at least one chance to amend his complaint to include the list of allegations proffered earlier in the this brief.  Appellant respectfully suggest the Court should to allow it, given the specific facts of the record below, and in the interests of justice.

First, Federal Rule 15(a)(2) contemplates the court "should freely give leave [to amend] when justice so requires." Although Spencer's lawyer didn't explicitly ask for leave to amend in his briefing papers, he clearly took action to appraise the court of and argue additional and clarified facts not set out in plaintiff's original complaint. The failure of Spencer's lawyer to explicitly request leave to amend seems more like a technical deficiency rather than a substantive one.

And, when it comes to curing technical deficiencies, this Court has previously said a district court ought to "afford plaintiffs at least one opportunity to cure pleading deficiencies before dismissing a case, unless it is clear that the defects are incurable or the plaintiffs advise the court that they are unwilling to unable to amend in a manner that will avoid dismissal." *Great Plains Tr. Co. v. Morgan Stanley Dean Witter & Co.*, 313 F.3d 305, 329 (5th Cir. 2002). This Court said the same thing in *Hart v. Bayer Corp.*, 199 F.3d 239, 248 n.6 (5th Cir. 2000) ("a plaintiff's failure to meet the specific pleading requirements should not automatically or inflexibility result in dismissal of the complaint with prejudice to re-filing"). And the Court said it again in *Cates v. Int'l Tel. & Tel. Corp.*, 756 F.2d 1161 (5th Cir. 1985), a case in which plaintiff was represented by

counsel, and in which the Court wrote "such deficiencies do not normally justify dismissal of the suit on the merits and without leave to amend, at least not in the absence of special circumstances." *Id.* at 1180.

More broadly, this Court has generally said "Granting leave to amend is especially appropriate, in cases such as this, when the trial court has dismissed the complaint for failure to state a claim." *Griggs v. Hinds Junior Coll.*, 563 F.2d 179, 180 (5th Cir. 1977).

District courts in this Circuit generally say and do the same thing. In *Hinton v. Amazon.com.dedc, LLC*, 72 F.Supp.3d 685 (S.D. Miss. 2014), a case involving a represented plaintiff, the district court noted "A court should ordinarily provide a claimant an opportunity to amend his complaint prior to granting a motion to dismiss with prejudice . . . [unless] any amendment would be futile or the plaintiff has presented his best case." *Id.* at 692.

What constitutes a plaintiff's "best case"? "While a precise definition of a plaintiff's 'best case' is elusive, this court often assumes a plaintiff asserts its best case after the plaintiff is 'apprised of the insufficiency' of the complaint." *Dark v. Potter*, 293 Fed. Appx. 254, 257

(5th Cir. 2008). Here, of course, we don't know Spencer's best case because he hasn't been able to amend after the district court's dismissal.

In *C & C Inv. Properties, LLC v. F.D.I.C.*, 3:12CV57-DPJ-FKB, 2013 WL 1136337, at *3 (S.D. Miss. Mar. 18, 2013), the district court considered whether to grant leave to amend after dismissing plaintiff's case on a motion to dismiss. Like in this case, plaintiff was represented by counsel who did *not* ask for leave to amend, and the district court decided not to grant leave. But, instructively, the district court only denied leave because the court had previously granted leave to amend twice before, and based on plaintiff's prior amendments the court concluded plaintiffs stood no chance of curing the deficiencies that warranted granting defendant's motion to dismiss. *Id.* Here, of course, Spencer hasn't filed any amendments to his complaint yet. It doesn't seem implausible or hopeless that Spencer can allege sufficient facts to state viable cases for Title VII failure-to-accommodate discrimination and retaliation.

Appellant recognizes and acknowledges that this trouble about amending was caused by plaintiff's own making (or, rather, the making of plaintiff's former lawyer). Still, there appears no bright-line rule in

this Circuit absolutely forbidding amendment in response to a dismissal under Rule 12(b)(6) solely because plaintiff's counsel doesn't explicitly request it, and this Court has often said before that leave to amend is especially appropriate in response to a Rule 12 dismissal absent special circumstances.

Ultimately, appellant respectfully asks the Court to reverse the district court's dismissal of his case and permit him one chance to amend his complaint and state his best case. The facts plaintiff argued in his opposition briefing to the district court and otherwise proffered to this Court earlier in this brief certainly seem to state viable causes of action for Title VII failure-to-accommodate liability and retaliation. Likewise, SEPCO certainly made liberal use of multiple fact-based exhibits it submitted in support of its motion to dismiss to make its best-case argument. Granting this relief will cost time in terms of efforts already spent, yes, but won't unfairly prejudice SEPCO's defense going forward.

For all these reasons, appellant respectfully suggests the equities involved lean towards granting Spencer at least one chance to amend and plead his best case. If this Court agrees, then appellant suggests the questions of whether the district court correctly dismissed Spencer's Title

VII failure-to-accommodate and retaliation claims should wait for another day, to be better informed by the addition of Spencer's clarified and newly proffered allegations, and unless and until SEPCO moves to dismiss for a second time.  As this Court has said many times, "a court of appeals sits as a court of review, not of first view." *Sentry Ins. v. Morgan*, 101 F.4th 396, 399 (5th Cir. 2024).

## C.  Even without amendment, the district court erred by dismissing plaintiff's Title VII failure-to-accommodate claim

Nevertheless, even if this Court doesn't permit Spencer to return to the district court to amend his complaint, there seems to be enough meat on the bones of his complaint and briefing papers that, considering the applicable law, the district court should not have dismissed his Title VII failure to accommodate claim.

### 1.  Plaintiff sufficiently alleged failure-to-accommodate discrimination under Title VII

A plaintiff states a claim for religious discrimination vis-à-vis management's failure to accommodate his religious objection to company policy by proving "(1) she held a bona fide religious belief, (2) her belief conflicted with a requirement of her employment, (3) her employer was informed of her belief, and (4) she suffered an adverse employment action

for failing to comply with the conflicting employment requirement." *Davis v. Fort Bend Cty.*, 765 F.3d 480, 485 (5th Cir. 2014). On brief at the district court below, SEPCO didn't challenge that Spencer held a sincere religious objection to its COVID-19 vaccination policy or that he failed to request accommodation. Instead, SEPCO argued Spencer failed to allege he was terminated from his job and, more fundamentally, that SEPCO did reasonably accommodate Spencer by giving him approximately six months to find another job before he faced termination. ROA.70-73.

On the first point, SEPCO's argument that Spencer didn't allege he resigned to avoid termination because of his religious beliefs is a cheeky move considering SEPCO knew very well that's exactly what happened. SEPCO's argument rings more as a "technical deficiency" to plaintiff's complaint, which this Court disfavors, versus a substantive failure to state a viable claim.

Likewise, as discussed in Section A of appellant's Argument, *supra*, Spencer's lawyer responded to SEPCO's argument on this point by making clear in his briefing papers that Spencer accepted a lesser paying job with SPLC after SEPCO denied his request for accommodation.

ROA.111, 114, 115, 116,0120.  Spencer's lawyer also attached an exhibit to his opposition brief evidencing that Spencer joined SPLC on July 10, 2022, and that SEPCO closed out his PIP five days later because of his resignation.  ROA.123.

But even without those allegations, Spencer's lawyer requested "lost wages" as a measure of damages in plaintiff's original complaint, *see* ROA.10, which is a remedy classically available for termination, suspension, or demotion.  Construing plaintiff's allegations as true for the purposes of SEPCO's motion, plaintiff alleged facts plausibly suggesting either the loss of his job or some other bona fide adverse action.  Assuming this Court agrees, plaintiff satisfactorily alleged all the elements of his prima facie case for failure-to-accommodate discrimination under this Court's prevailing caselaw.

**2.    *Bruff* is inapplicable to this case, and whether SEPCO's "temporary accommodation" was reasonable or not is a question of fact not appropriate for resolution on a motion to dismiss**

Once a plaintiff proves his prima facie case, the employer must prove an ***affirmative defense*** that it either "reasonably accommodated the employee, or that it was unable to reasonably accommodate the employee's needs without undue hardship." *Davis*, 764 F.3d at 485.  This

matters because ordinarily a defendant cannot prevail on a motion to dismiss based on an affirmative defense unless the "defense appears *clearly* on the face of the pleadings . . . the validity of the affirmative defense must essentially be unquestionable." *U.S. Enercorp, Ltd. v. SDC Montana Bakken Expl., LLC*, 966 F.Supp.2d 690, 697 (W.D. Tex. 2013), *citing Clark v. Amoco Prod. Co.*, 794 F.2d 967, 970 (5th Cir. 1986).

The Supreme Court has suggested a "reasonable accommodation" under Title VII is one that "eliminates the conflict between employment requirements and religious practices." *Ansonia Bd. Of Educ. V. Philbrook*, 497 U.S. 60, 70 (1986).  On brief, SEPCO's only argument against Spencer's reasonable-accommodation claims is that giving Spencer at first 60 days (which stretched to approximately six months) to look for (and hopefully land) another job within SEPCO constituted a "reasonable accommodation" as a matter of law.

To support its argument, SEPCO principally cites to this Court's decision in *Bruff v. N. Miss. Health Servs, Inc.*, 244 F.3d 495 (5th Cir. 2001).  SEPCO fundamentally misunderstands *Bruff*, the nature of "reasonableness" in the context of a Title VII religious accommodation claim, and the prevailing decisional law.

First, the law. Title VII's accommodation provision, codified at 42 U.S.C. § 2000e(j), "obligates an employer to 'reasonably accommodate' an employee's religious observance or practice unless doing so poses undue hardship to the employer's business." *E.E.O.C. v. Universal Mfg. Corp.*, 914 F.2d 71 (5th Cir. 1990). A ***reasonable*** accommodation offered by an employer satisfies its burden under Title VII. An ***unreasonable*** offer does not. *Id.* Who decides whether an accommodation is reasonable or not? "Ordinarily, questions of [Title VII] reasonableness are best left to the fact finder." *Id.* at 73. The United States Supreme Court essentially held the same in *Ansonia*, another case that dealt with a purportedly reasonable accommodation under Title VII:

> The [defendant] school board contends that the [offered accommodation was reasonable]. [Plaintiff] Philbrook, on the other hand, asserts that the [offered accommodation was not]. We do not think that the record is sufficiently clear on this point for us to make the necessary factual findings, and we therefore . . . remand[] the case to the District Court . . . [to] make necessary factual findings as to past and existing practice in the administration of the collective-bargaining agreements.

*Ansonia*, 479 U.S. at 71.

Of course, by granting SEPCO's motion to dismiss on this point, the district court essentially determined, as a matter of fact on a Rule

12(b)(6) motion to dismiss, that SEPCO's proffered accommodation was so "unquestionably" reasonable that it constituted an irrebuttable, affirmative defense as a matter of law. *U.S. Enercorp, Ltd.*, *supra*. There certainly doesn't seem to be enough factual allegations in the record to support such a finding in SEPCO's favor.

Second, the merits. SEPCO's argument is predicated on the idea that offering Spencer a chunk of time to find, apply for, and win another job within SEPCO or be fired was "reasonable." SEPCO then says because this offer was "reasonable," it was free to disregard any of Spencer's requested accommodations (which, again, was simply to maintain the status quo and continue working from home and the Robert Training Center). SECO says this Court's decision in *Bruff* support its argument. As threshold matter, the appeal in *Bruff* was decided after discovery and a full trial on the merits, not on a motion to dismiss, and so its persuasiveness to this case is already limited.

In any event, in *Bruff v. N. Miss. Health Servs, Inc.*, a mental health counselor employed by the local hospital was required, as part of her job responsibilities, to treat patients referred to the hospital under various healthcare contracts. Based on her religious objections, the counselor

outright refused to treat patients who were gay or lesbian or who were otherwise struggling with romantic relationships outside of marriage. The *Bruff* panel described the counselor as outright objecting to "some aspects of the [counseling] position itself," *Bruff*, 244 F.3d at 500, and "apparently assumed she would only have to perform those aspects of the position she found acceptable." *Id.*

Here, the facts of *Bruff* already diverge from Spencer's case. There is no allegation in the case that Spencer ever objected to any of his job responsibilities. Just the opposite. All Spencer ever requested was to simply continue working at home at the Robert Training Center while observing the same safety protocols that SEPCO had required before COVID-19 vaccines became publicly available in the United States and, after that, all the way up until Spencer resigned in lieu of termination in July 2022. In other words, all Spencer asked was to continue doing his job the same he had always done it. SEPCO said no and never offered any plausible explanation why.

Back to *Bruff*. The hospital offered the counselor multiple reasonable accommodations, all of which the employee rejected. First, management "met several times to determine if Bruff's request could be

accommodated by shifting responsibilities among the three [other] counselors." *Id.* at 497. But there were only three counselors in the unit, one of whom was the supervisor, and the hospital found switching schedules based on specific patients wasn't feasible. *Id.* Management then offered to allow Bruff to transfer to a different unit within the counseling department "specifically performing pastoral or Christian counseling." Bruff refused (!!) because she believed her proposed supervisor would not approve of her "conservative" religious views. *Bruff* at 498.

Management then offered to let Bruff request a transfer to any other position "in which conflict of care issues were less likely to occur" and offered to assign its "in-house employment counselor . . . to assist Bruff in locating another position within the hospital system." *Id.* The hospital gave Bruff 30 days to find another position. During that time, the hospital's in-house counselor did find Bruff a "list of available openings, and offered her the opportunity to take two tests designed to manifest her aptitudes and interests." But Bruff refused "to take the tests or to apply for any non-counselor position." *Id.* At the same time, "another counselor position became available" but again Bruff "chose not

to apply." *Id.* at 499. After 30 days, and faced with an employee who quite literally both refused to do her job and refused to do anything at all to reach an alternative accommodation, the hospital finally terminated Bruff's employment.

Once again, the facts of *Bruff* are nothing like those in this case and are completely irrelevant to determining the reasonableness of SEPCO's purported "60-days until we fire you" policy. Unlike the counselor in *Bruff*, Spencer never objected to performing any of his job responsibilities. SEPCO never offered Spencer any reassignment. The record is devoid of any allegation that SEPCO offered to help Spencer find another job, and one of the allegations Spencer has proffered on this appeal is that, in fact, there were no open and available jobs for him to apply for prior resigning in lieu of termination.

The fundamental difference between *Bruff* and this case is that, in *Bruff*, the employer made several bona fide attempts to accommodate its employee based on her religious objection – including offering Bruff a job transfer, restructured job responsibilities, and in-house help to find another position. Here, Spencer's allegations, both appearing in the

42

record and proffered to this Court on appeal, are that SEPCO's self-described "temporary accommodation" was a simply a sham.

In any event, and apt to the consideration SEPCO's arguments to the district court below, what makes an accommodation "reasonable" is based on the facts and circumstances of the matter. In *Bruff*, the plaintiff-employee rejected all offers of what appeared to be objectively earnest attempts to accommodate her religious beliefs. In that context, an employer's eventual demand to a recalcitrant employee to find some work, any work, within 30 days or face termination seems reasonable. As the *Bruff* panel succinctly stated: "Title VII does not require an employer to accommodate such an inflexible position." *Id.* at 500. Here, there is no record evidence that Spencer adopted any such inflexible position.

In reality, SEPCO's arguments to the district court below did nothing to "unquestionably" prove its "60 days or you're fired" policy was "reasonable" as a matter of law – and certainly not so reasonable as to disregard Spencer's request to simply continue working the same way he had always been, on shore, both at home and at the Robert Training Facility.

Summed up, SEPCO's argument below is the idea that it had no duty to accommodate Spencer based on his religious objection in the first place because doing so might have caused it an "undue burden." But on a Rule 12(b)(6) motion to dismiss, SEPCO's argument on that point is almost certainly foreclosed by the Supreme Court's recent religious accommodation decision in *Groff v. DeJoy*, 600 U.S. 447, 468 (2023), holding that an employer must prove a "substantial" hardship "in the overall context of an employer's business" before denying accommodation to a religious objector. SEPCO certainly doesn't have any sufficient facts on this record to carry such a heavy burden, nor did it even attempt carry that at the district court below.

In contrast, this case (at least at this stage of the proceeding) is more aligned with the Tenth Circuit's decision in *Tabura v. Kellogg USA*, 880 F.3d 544, 555 (10th Cir. 2018). There, the circuit court reversed summary judgment in favor of management based on its argument that it "reasonably" accommodated its employees' request for time off to observe the Sabbath by forcing the employees to use accrued vacation time plus permitting them to swap shifts with agreeable co-workers. *Id.* at 555. The plaintiffs argued the accommodation was unreasonable

because the number of available co-workers with whom to swap was limited, and otherwise at some point the plaintiffs would exhaust their paid time off.

The Tenth Circuit reversed summary judgment, finding that "whether an accommodation is reasonable in a given circumstance is ordinarily a question of fact to be decided by the fact finder." *Id.* at 555. The same is true in this case. Whether SEPCO's proffered "60-days-or-you're-fired accommodation" was reasonable or not cannot be determined on a motion to dismiss, or at least not a motion to dismiss based on this record. Discovery must be conducted to determine whether SEPCO's "temporary accommodation" was reasonable or not under the facts of the case. If not, then SEPCO failed to carry its affirmative defense as a matter of law.

For all these reasons, the district court erred by relying on SEPCO's argument that this Court's decision in *Bruff* was dispositive in the case. Even without granting appellant leave to amend his complaint, this Court should reverse the district court's dismissal of Spencer's Title VII failure-to-accommodate claim.

**D.    Even without amendment, the district court erred by dismissing plaintiff's Title VII retaliation claim**

SEPCO argued to the district court that management's decision to issue Spencer a performance improvement plan two weeks after he filed his Charge of Discrimination wasn't retaliatory as a matter of law, citing to *Jackson v. Honeywell Int'l, Inc.*, 601 F. App'x 280, 286 (5th Cir. 2015). SEPCO also argued that management's decision to issue Spencer a letter crystalizing his termination date on July 18, 2022 wasn't retaliatory as a factual matter because SEPCO had always planned to fire Spencer for non-compliance with Shell's vaccination rule anyway.  The district court agreed with SEPCO and dismissed Spencer's retaliation claim.  That was error for the reasons discussed below.

**1.    Spencer's PIP was sufficiently adverse to constitute a retaliatory act**

SEPCO's argument, and the district court's decision, rests on the interpretation of a portion of this Court's decision in *Jackson v. Honeywell Int'l, Inc.*, 601 Fed. Appx. 280 (5th Cir. 2015).  There, this Court noted "written warnings and unfavorable performance reviews are not adverse employment actions where colorable grounds exist for disciplinary action or where the employee continues to engage in

protected activity." *Id.* at 286.  SEPCO argued, and the district court agreed, that SEPCO issued the PIP for colorable reasons, and the PIP didn't dissuade Spencer from complaining because he admittedly amended his Charge of Discrimination about two weeks after receiving the PIP.  SEPCO's argument and the district court's analysis is misplaced.

First, even assuming a PIP issued for "colorable grounds" cannot be retaliatory as a matter of law, that is a question of fact not ordinarily resolvable on a motion to dismiss.  Indeed, the district court in *Jackson* determined the PIP in question was based on colorable grounds after full discovery on a motion for summary judgment.  That isn't the case here.  Although the district court found that "Plaintiff does not address the PIP"s various grounds in his Complaint or Response[,] ROA.147, that's not accurate.  Plaintiff's complaint and his lawyer's opposition briefing made clear that Spencer alleged the PIP was baselessly issued for pretextual purposes.  ROA.8-9, 113, 114, 119.  Spencer also alleged that he has a "clear disciplinary record" was in the "top ten per cent (10%)" of his peer group as selected by his management.  ROA.120.

Moreover, the district court's treatment of this issue more accurately resembled fact-finding on something like a dispositive motion after the benefit of discovery. Of course, on a motion to dismiss, the Court assumes plaintiff's well-pled allegations are true. The district court should not have made a factual finding that SEPCO had a colorable basis to issue Spencer a PIP, particularly over Spencer's allegations to the contrary, absent discovery and on a motion for summary judgment or at trial.

Second, regarding whether SEPCO's PIP did or didn't dissuade Spencer from making further complaints, appellant respectfully notes *Jackson* was an unpublished decision and not binding on this appeal. *See* 5th Cir. R. 47.5.4.[8] Although appellant doesn't suggest that all written warnings or PIPs are sufficiently or materially adverse to constitute retaliatory acts, appellant does argue that whether or not Spencer was dissuaded from future complaints is irrelevant.

The Supreme Court has held since its seminal decision in *Burlington Northern v. Santa Fe* that an adverse act in the context of

---

[8]   The rule provides, in part, "Unpublished opinions issued on or after January 1, 1996, are not precedent, except under the doctrine of res judicata, collateral estoppel or law of the case (or similarly to show double jeopardy, notice, sanctionable conduct, entitlement to attorney's fees, or the like)."

Title VII retaliation is one that might dissuade a reasonable worker from making a charge of discrimination:

> In our view, a plaintiff must show that a reasonable employee would have found the challenged action materially adverse, which in this context means it well might have dissuaded a reasonable worker from making or supporting a charge of discrimination.

*Burlington N. & Santa Fe Ry. Co. v. White*, 548 U.S. 53, 68 (2006) (internal quotations omitted).  To the extent the panel in *Jackson* held differently – that adversity in the retaliation context is a subjective test dependent on whether the plaintiff himself was actually dissuaded from complaining – that is inconsistent with binding Supreme Court precedent.  It's also inconsistent with this Court's prior decisions on that same point.  *See e.g.*, *Stewart v. Mississippi Transp. Comm'n*, 586 F.3d 321, 331 (5th Cir. 2009) ("To constitute prohibited retaliation, an employment action must be 'materially adverse,' one that would 'dissuade[ ] a reasonable worker from making or supporting a charge of discrimination.'"), *citing Burlington Northern*, *supra*.

Finally, the conclusion argued by SEPCO and accepted by the district court is inconsistent with Title VII's statutory exhaustion requirements.  All Title VII claimants *must* file a Charge with the EEOC

or local state agency alleging retaliation to further prosecute that claim in court.  If SEPCO and the district court's conclusion were correct, *no* Title VII claimant could *ever* successfully claim retaliation because – of course – the adverse action at issue wouldn't have actually dissuaded the claimant from filing with the EEOC in the first place.

In any event, under the correct reasonable-employee standard, any reasonable SEPCO employee "might well have been dissuaded" from complaining further after being issued a pretextual PIP.  The document itself provides that failure to comply with the PIP could result in termination.  ROA.89.  The context of SEPCO's issuance of the PIP matters too.  SEPCO management issued Spencer the "baseless" PIP just two weeks after he filed his Charge of Discrimination with the EEOC. Assuming under Rule 12 that Spencer's allegations are correct – that SEPCO did issue him a performance document that could result in his termination because he complained about discrimination to the EEOC, what reasonable employee *wouldn't* "might well be dissuaded" from future complaints?

## 2.    Plaintiff's allegations sufficiently linked his protected complaints to SEPCO's termination warning

Finally, plaintiff alleged in his complaint that his SEPCO manager, Lautrice McLendon, retaliated against him by putting him on firm notice, only after he filed his Charge of Discrimination, that he would be fired effective July 18, 2022 unless he complied with Shell's vaccination mandate or found another job.  ROA.8.  SEPCO attached the letter to its motion to dismiss.  ROA.94.  SEPCO argued, and the district court agreed, that plaintiff failed to allege facts suggesting that his prior Charge of Discrimination was the cause of McLendon's termination warning.  ROA.143.  SEPCO and the district court failed to correctly analyze the issue.

First, the law.  "The causal connection required in the third prong of the plaintiff's *prima facie* [retaliation] case has a lower threshold than the 'but for' causation required to ultimately prove retaliation." *Porter v. Shineski*, 650 F.Supp.2d 565, 575 (E.D. La. 2009) (emphasis added), *citing Sherrod v. American Airlines, Inc.*, 132 F.3d 1112, 1122 n. 8 (5th Cir. 1998).  As this Circuit noted in *Sherrod*:

> A plaintiff establishes a prima facie case of unlawful retaliation by proving (1) that she engaged in protected activity, (2) that an adverse employment action occurred, and (3) that a causal link existed between the protected activity and the adverse employment action. **The burden of establishing the "causal link" in the prima facie case is much less onerous than the burden of proving "but-for" causation required for the determination of the ultimate issue of retaliation.**

*Sherrod*, 132 F.3d at 1122 n.8 (emphasis added); *accord Long v. Eastfield Coll.*, 88 F.3d 300, 305 n.4 (5th Cir. 1996) ("The standard for establishing the 'causal link' element of the plaintiff's *prima facie* case is much less stringent").

This Circuit has held "a plaintiff alleging retaliation may satisfy the causal connection element by showing '[c]lose timing between an employee's protected activity and an adverse action against him.'" *Feist v. Louisiana, Dep't of Justice, Office of the Atty. Gen.*, 730 F.3d 450, 454 (5th Cir. 2013). A "time lapse of up to four months may be sufficiently close" to demonstrate *prima facie* causation. *Id.*

Here, of course, plaintiff certainly admits and alleges in his complaint and briefing papers that SEPCO failed to accommodate his religious belief and did indicate he faced termination after a certain period of time beginning since November 2021 because of it. Still, in the

alternative, and in the context of a Rule 12 *prima facie* case, McLendon's letter is the first evidence in the record that conclusively shows management placed a date-certain on Spencer's termination unless he submitted to vaccination or resigned. And McLendon didn't issue that letter until less than one month after Spencer filed his Charge of Discrimination. Why then? Why not back in February, March, or April 2022? If what finally motivated SEPCO to move from mere threat of termination to actual, planned termination was Spencer's protected complaint, that satisfies the definition of Title VII retaliation.

## X.    CONCLUSION

For all these reasons, plaintiff-appellant Tim Spencer respectfully asks this Court to reverse the district court's dismissal of his claims with prejudice, either for the purpose of remanding with instructions to permit Spencer to amend his complaint so he has at least one opportunity to state his "best case," or otherwise on the merits determining that plaintiff sufficiently alleged his claims for Title VII failure-to-accommodate discrimination and retaliation to survive SEPCO's Rule 12(b)(6) motion to dismiss.

Respectfully submitted:

/s/ Kevin S. Vogeltanz
Kevin S. Vogeltanz (Bar #32746)
Law Office of Kevin S. Vogeltanz, LLC
428 W. 21st Ave. / Covington, LA 70433
Office: (504) 275-5149
Fax: (504) 910-1704
Email: vogeltanz@gmail.com

*Attorney for Appellant Tim Spencer*

## CERTIFICATE OF SERVICE

Pursuant to Fed. R. App. P. 25 and Fifth Circuit Rule 25.2.5, I, Kevin S. Vogeltanz, certify that on August 13, 2024 I filed appellant's original brief via the Court's CM/ECF system. To the best of my knowledge, all parties in this case are represented by attorneys who are registered Filing Users in this case and who will receive notice through the Court's CM/ECF system.

/s/ Kevin S. Vogeltanz
Kevin S. Vogeltanz (Bar #32746)
Law Office of Kevin S. Vogeltanz, LLC
823 Carroll Street, Suite A
Mandeville, LA 70448
Office: (504) 275-5149
Fax: (504) 910-1704
Email: vogeltanz@gmail.com

*Attorney for Appellant Tim Spencer*

# CERTIFICATE OF COMPLIANCE

Pursuant to 5th Cir. R. 32.3, I hereby certify that this brief complies with the type-volume limitations of 5th Cir. R. 32.2 and Fed. R. App. P. 32(a)(7)(b) because: excluding the parts of the document exempted by Fed. R. App. P. 32(f), this document contains 10,593 words.

This document complies with the typeface requirements of Fed. R. App. P. 32(a)(5) and the type-style requirements of Fed. R. App. P. 32(a)(6) because: this document has been prepared in a proportionally spaced typeface using Microsoft Word for Mac, version 16.54, in Century Schoolbook font, with 14-point font for text, and with 12-point font for footnotes.

/s/ Kevin S. Vogeltanz
Kevin S. Vogeltanz (Bar #32746)
Appeal Counsel
Law Office of Kevin S. Vogeltanz, LLC
823 Carroll Street, Suite A
Mandeville, LA 70448
Office: (504) 275-5149
Fax: (504) 910-1704
Email: vogeltanz@gmail.com
*Attorney for Appellant Tim Spencer*