# No. 24-20173

IN THE
## UNITED STATES COURT OF APPEALS
## FOR THE FIFTH CIRCUIT

Tim Spencer,

*Plaintiff - Appellant,*

v.

Shell Exploration & Production Company,

*Defendant - Appellee.*

ON APPEAL FROM THE UNITED STATES DISTRICT COURT FOR THE
SOUTHERN DISTRICT OF TEXAS, HOUSTON DIVISION
CIVIL ACTION NO. 4:22-CV-04166
JUDGE ALFRED H. BENNETT, PRESIDING

## BRIEF OF APPELLEE
## SHELL EXPLORATION & PRODUCTION COMPANY

Anthony J. Campiti
Weston J. Mumme
Holland & Knight LLP
One Arts Plaza
1722 Routh Street, Suite 1500
Dallas, Texas 75201
(214) 969-1700
(214) 969-1751 (Fax)

ATTORNEYS FOR APPELLEE SHELL EXPLORATION & PRODUCTION COMPANY

## CERTIFICATE OF INTERESTED PERSONS

1.    Tim Spencer v. Shell Exploration & Production Company, No. 24-20173.

2.    The undersigned counsel of record certifies that the following listed persons and entities as described in the fourth sentence of Rule 28.2.1 have an interest in the outcome of this case. These representations are made in order that the judges of this court may evaluate possible disqualification or recusal:

Plaintiff-Appellant Tim Spencer

Kevin S. Vogeltanz of The Law Office of Kevin S. Vogeltanz, LLC, counsel for Spencer on appeal

Gregg M. Rosenberg of Rosenberg & Associates, counsel for Spencer in the district court

Defendant-Appellee Shell Exploration & Production Company

Shell Exploration & Production Company, a Delaware corporation, is a wholly owned subsidiary of Shell Oil Company, which is also a Delaware corporation. Shell Oil Company is a subsidiary of Shell PLC, a public company

Anthony J. Campiti and Weston J. Mumme, of Holland & Knight LLP, counsel for Shell Exploration & Production Company on appeal and in the district court.

s/ Anthony J. Campiti
Anthony J. Campiti
Attorney of Record for Defendant-Appellee Shell Exploration & Production Company

## STATEMENT REGARDING ORAL ARGUMENT

This case does not need oral argument or even a lengthy opinion. The issues in the appeal are limited, straightforward, and resolved by established caselaw. The district judge correctly applied the law and granted Shell's motion to dismiss.

# TABLE OF CONTENTS

Certificate of Interested Persons ............................................................. i

Statement Regarding Oral Argument ...................................................... ii

Table of Authorities ................................................................................ v

Issues Presented for Review .................................................................... 1

Statement of the Case ............................................................................. 2

I.    Factual Background ......................................................................... 2

II.   Procedural History .......................................................................... 7

III.  New Allegations .............................................................................. 11

Summary of the Argument ...................................................................... 15

Argument ................................................................................................. 18

I.    Standard of Review. ........................................................................ 18

II.   The Court Should Affirm the District Court's Order
Granting Shell's Motion to Dismiss. .............................................. 20

     A.    Spencer has already presented his best case and never
sought leave to replead despite ample opportunity and
notice that his pleadings were deficient. ............................... 20

     B.    The district court correctly held Spencer failed to state
a claim of religious discrimination for failure to
accommodate under Title VII. ............................................... 26

     C.    The district court correctly held Spencer failed to state
a claim for retaliation under Title VII. ................................. 32

          1.    Spencer's allegations concerning the performance
improvement plan fail to plausibly establish a
materially adverse action. .......................................... 33

          2.    Spencer's allegations concerning the termination
warning are contradictory and fail to plausibly
establish causation. ..................................................... 36

Conclusion ............................................................... 38

Certificate of Compliance with Rule 32(a) ............................................. 40

# TABLE OF AUTHORITIES

**Page(s)**

**Cases**

*Alamo Heights Indep. Sch. Dist. v. Clark*,
   544 S.W.3d 755 (Tex. 2018) ................................................................ 37

*Ansonia Bd. of Educ. v. Philbrook*,
   479 U.S. 60 (1986) .................................................................... 27, 28

*Antoine v. First Student, Inc.*,
   713 F.3d 824 (5th Cir. 2013) ............................................................ 27

*Ashcroft v. Iqbal*,
   556 U.S. 662 (2009) .................................................................. 18, 19

*Bazrowx v. Scott*,
   136 F.3d 1053 (5th Cir. 1998) .......................................................... 22

*Bell Atlantic Corp. v. Twombly*,
   550 U.S. 544 (2007) .................................................................. 18, 19

*Brandon v. Sage Corp.*,
   808 F.3d 266 (5th Cir. 2015) ............................................................ 36

*Brooks v. Hou. Indep. Sch. Dist.*,
   86 F. Supp. 3d. 577 (S.D. Tex. 2015) ................................................ 34

*Brown v. Taylor*,
   829 F.3d 365 (5th Cir. 2016) ...................................................... 22, 23

*Bruff v. N. Miss. Health Servs., Inc.*,
   244 F.3d 495 (5th Cir. 2001) .................................................. 27, 28, 29

*Burlington N. & Santa Fe Ry. Co. v. White*,
   548 U.S. 53 (2006) ........................................................................ 33

*Car Carriers, Inc. v. Ford Motor Co.*,
   745 F.2d 1101 (7th Cir. 1984) .......................................................... 19

*Carver v. Atwood*,
  18 F.4th 494 (5th Cir. 2021) ....................................................... 22, 23

*Cinel v. Connick*,
  15 F.3d 1338 (5th Cir. 1994) ................................................................ 8

*Dachman v. Shalala*,
  9 F. App'x 186 (4th Cir. 2001) ........................................................... 27

*Dark v. Potter*,
  293 F. App'x 254 (5th Cir. 2008) ....................................................... 23

*Eberle v. Gonzales*,
  240 F. App'x 622 (5th Cir. 2007) ....................................................... 35

*Eversley v. MBank Dall.*,
  843 F.2d 172 (5th Cir. 1988) .............................................................. 26

*Gonzalez v. Thaler*,
  351 F. App'x 946 (5th Cir. 2009) ....................................................... 22

*Gottlieb v. Tulane Univ. of La.*,
  809 F.2d 278 (5th Cir. 1987) .............................................................. 35

*Gupta v. E. Tex. State Univ.*,
  654 F.2d 411 (5th Cir. 1981) .............................................................. 35

*Hamilton v. Dallas County*,
  79 F.4th 494 (5th Cir. 2023) .............................................................. 32

*Hinton v. Amazon.com.dedc, LLC*,
  72 F. Supp. 3d 685 (S.D. Miss. 2014) ............................................... 31

*Horvath v. City of Leander*,
  946 F.3d 787 (5th Cir. 2020) .............................................................. 27

*Izadjoo v. Helix Energy Sols. Grp., Inc.*,
  237 F. Supp. 3d 492 (S.D. Tex. 2017) ................................................. 7

*Jackson v. Honeywell Int'l, Inc.*,
  601 F. App'x 280 (5th Cir. 2015) ....................................................... 33

*Joseph v. Bach & Wasserman, LLC,*
    487 F. App'x 173 (5th Cir. 2012).........................................................26

*Manning v. Chevron Chem. Co.,*
    332 F.3d 874 (5th Cir. 2003)........................................................37, 38

*McCoy v. City of Shreveport,*
    492 F.3d 551 (5th Cir. 2007)..............................................................32

*Roebuck v. Dothan Sec., Inc.,*
    515 F. App'x 275 (5th Cir. 2013)........................................................19

*Sligh v. City of Conroe,*
    87 F.4th 290 (5th Cir. 2023) .......................................................3, 18, 19

*Stankevich v. Miss. Coll. Sch. of Law,*
    No. 24-60087, 2024 WL 4056610 (5th Cir. Sept. 5, 2024).................22

*Stevens v. St. Tammany Par. Gov't,*
    17 F.4th 563 (5th Cir. 2021) ...................................................8, 15, 21

*Tiano v. Dillard Dep't Stores, Inc.,*
    139 F.3d 679 (9th Cir. 1998)...............................................................28

*Trans World Airlines, Inc. v. Hardison,*
    432 U.S. 63 (1977)...............................................................................26

*Vaughn v. Waffle House, Inc.,*
    263 F. Supp. 2d 1075 (N.D. Tex. 2003)..............................................29

*Villareal v. Wells Fargo Bank, N.A.,*
    817 F.3d 763 (5th Cir. 2016).............................................................19

## Statutes

42 U.S.C. § 2000e-2(a)(1)........................................................................26

42 U.S.C. § 2000e-3(a) ............................................................................32

**Rules**

Fed. R. Civ. P. 12(b)..................................................................24

Fed. R. Civ. P. 12(b)(6) ............................................ 18, 19, 35

Fed. R. Civ. P. 15(a)(1)(B) ......................................................24

# ISSUES PRESENTED FOR REVIEW

1.     Did Spencer plead his best case when, in response to Shell's motion to dismiss for failure to state a claim, he repeatedly declared the adequacy of his complaint and refused to file a supplemental complaint for more than 11 months during which Shell's motion was pending before the district court?

2.     Did the district court err by granting Shell's motion to dismiss on Spencer's claim for failure to accommodate when he affirmatively pled that Shell provided a legally sufficient alternative accommodation?

3.     Did the district court err by granting Shell's motion to dismiss on Spencer's claim for retaliation when he failed to allege causation or an actionable adverse employment action?

## STATEMENT OF THE CASE[1]

### I.   FACTUAL BACKGROUND

Since the beginning of the Covid-19 pandemic, Shell implemented numerous precautionary measures to prevent the spread of Covid-19. ROA.83. That is especially true with respect to the U.S. Gulf of Mexico Offshore Sites (the "Offshore Sites"), which are particularly vulnerable to the spread of Covid-19 and other infectious diseases.[2] ROA.83. Some of Shell's precautionary measures included (1) pre-embarkation quarantines for offshore workers, (2) preflight Covid-19 testing, (3) social distancing, and (4) the use of face coverings, among other mitigation measures recommended by the Centers for Disease Control and Prevention. ROA.83. Despite these robust mitigation efforts, Shell still experienced numerous Covid-19 cases throughout the Offshore Sites. ROA.83.

---

[1] Shell cites Appellant's Brief as "App. Brf."

[2] *See* ROA.83 ("In recognition of the remote nature of our offshore sites and the potential for COVID-19 patient conditions to rapidly deteriorate with only medevac available for expedient medical treatment of ill personnel, the US Country Chair has approved the Shell US COVID-19 Guidance 066 – Policy Mandating Vaccination for Shell US Offshore Workers which authorizes a vaccine mandate to access Offshore Sites (as defined below) in the US Gulf of Mexico as a critical measure to lower the overall risk profile to our offshore personnel.").

On November 1, 2021,[3] Shell announced a mandatory vaccine policy for offshore employees due to the unique social distancing and safety complications presented by the offshore work environment. ROA.7, 83-86. Pursuant to the policy, effective January 1, 2022, all offshore employees (including visitors and contractors) were required to be fully vaccinated in order to travel to an Offshore Site. ROA.83, 86. Shell informed the offshore employees that they could request an accommodation from the vaccination requirements due to current medical status, a disability, or a sincerely held religious belief. ROA.85. Shell committed to reviewing accommodation requests on a case-by-case basis. ROA.85.

Shell additionally offered an alternative accommodation in the event it was unable to grant an employee's desired accommodation (*i.e.*, to be permitted to continue working at Offshore Sites without being vac-

---

[3] Spencer's complaint contains numerous discrepancies, specifically with respect to dates. In accordance with well-established caselaw within this Circuit, those discrepancies are resolved in favor of the exhibits. *See, e.g.*, *Sligh v. City of Conroe*, 87 F.4th 290, 298 (5th Cir. 2023) ("If an allegation is qualified by the contents of an exhibit attached to the pleadings, but the exhibit instead contradicts the allegation, 'the exhibit and not the allegation controls.'") (citation omitted).

cinated). ROA.84-85. If the desired accommodation was denied, employees were afforded a 60-day period when they would be allowed to continue working at Offshore Sites while seeking other employment within the Company that was not subject to the mandatory vaccine policy. ROA.84-85. The 60-day period began on either the effective date of the vaccine policy, January 1, 2022, or the date the employee's preferred request for accommodations was denied, whichever date was later. ROA.85.

Following the expiration of the 60-day accommodation period, offshore employees who were not fully vaccinated would not be permitted to travel to Offshore Sites. ROA.85. According to the terms of the policy, "Shell employees who are denied access to their Shell work location because they failed to comply with [the vaccine] policy will be considered absent from work, and such absences will be treated as unexcused, unpaid absences subject to Shell's standard performance management processes which can result in disciplinary action, up to and including dismissal, in alignment with applicable Shell policy." ROA.85.

On December 16, 2021, Spencer sought an accommodation based on his religion, allowing him to continue working without being vaccinated.

4

ROA.16. Shell determined it was unable to provide Spencer with his preferred accommodation because it would cause an undue hardship. ROA.16-17. Instead, on January 14, 2022, Shell provided Spencer an alternative temporary accommodation of 60 days to continue working offshore while being unvaccinated, during which time he could look for other jobs within the Company that were not subject to the mandatory vaccine policy. ROA.87. Seemingly unsatisfied with the alternate accommodation, on April 5, 2022, Spencer filed a Charge of Discrimination ("Charge") with the Equal Employment Opportunity Commission ("EEOC") alleging Shell failed to accommodate his request for a religious exemption. ROA.6, 8, 78-79.

On April 21, 2022, Shell issued Spencer a performance improvement plan ("PIP") due to an observed pattern of underperformance in three key areas: (1) ability to follow company policies, procedures, guidelines, and rules; (2) ability to meet expectations and deliverables; and (3) collaborative, teamwork, and interpersonal behaviors. *See* ROA.8, 88-93. Regarding Spencer's failure to comply with Shell's policies, the PIP notes that Spencer had recently received a written warning for violating Shell's "life saving rules" and failed to "exhibit the [] core value of honesty."

ROA.88. The PIP additionally explains that Spencer repeatedly failed to comply with Shell's medical documentation requirements over a two-year span, including two recent instances from earlier that year. *See* ROA.8, 88.

As the November 1, 2021 Covid-19 Offshore Bulletin warned, employees who failed to comply with Shell's vaccine policy by the end of their 60-day accommodation period would be subject to potential discipline under applicable Shell policies. ROA.85. Accordingly, on May 3, 2022, Spencer was informed via email that he would be disciplined, up to an including termination of employment, in the future if he continued to be non-compliant with the vaccine policy. ROA.8, 94 (admonishing Spencer that "continued failure to meet the expectations of the [vaccine] policy will result in further corrective action in accordance with the Managing Individual Underperformance (MIU) Guidelines, up to and including termination"). At that time, Spencer was also told he could continue looking for other job positions that were not subject to the mandatory vaccine policy up until July 16, 2022. ROA.8, 94.

Two days later, Spencer filed his Amended Charge alleging retaliation in violation of Title VII. ROA.6, 80. Notably, Spencer's Amended

Charge specifically identified the PIP as evidence he was being retaliated against. ROA.80. Spencer's Charge and Amended Charge were subsequently dismissed on October 13, 2022. ROA.6, 81.

## II.  PROCEDURAL HISTORY

Spencer filed this lawsuit on December 1, 2022. ROA.5. In his complaint, Spencer repeatedly referenced and/or quoted the following documents: Spencer's EEOC Charge (ROA.6); Amended EEOC Charge (ROA.6); Notice of Right to Sue from the EEOC (ROA.6); Shell's Covid-19 Offshore Bulletin (ROA.7); Shell's response to Spencer's accommodation request (ROA.7-8); the PIP issued by Shell (ROA.8); and an email providing Spencer with a 60-day accommodation (ROA.8).

On April 19, 2023, Shell moved to dismiss Spencer's complaint for failure to state a claim. ROA.58-94. Because the above referenced documents were referred to throughout Spencer's complaint and were integral to his claims, Shell properly attached each to its motion to dismiss.[4]

---

[4] *See, e.g.*, *Izadjoo v. Helix Energy Sols. Grp., Inc.*, 237 F. Supp. 3d 492, 506 (S.D. Tex. 2017) ("A court may consider documents integral to and explicitly relied on in the complaint, that the defendant appends to his motion to dismiss, as well as the full text of documents that are partially quoted or referred to in the complaint.").

ROA.78-94. Spencer does not argue—and therefore waives such argument—that the attached exhibits were not properly before the district court.[5] *See* App. Brf. 26–27.

On May 10, 2023, Spencer filed his response to Shell's motion to dismiss for failure to state a claim. ROA.108-21. In his response, Spencer made numerous novel factual allegations that were not mentioned in his complaint. *See* App. Brf. 12 ("On brief to the district court, Spencer's lawyer also clarified some allegations previously alleged in plaintiff's complaint while asserting some related, *but admittedly new*, facts critical to plaintiff's case.") (emphasis added). But Spencer did not make any mention of a request for leave to replead. ROA.108-21; App. Brf. 22 ("Spencer's lawyer didn't explicitly ask for leave to amend. . . .").[6] Spencer did, however, *repeatedly* argue that his complaint adequately stated his

---

[5] *See Stevens v. St. Tammany Par. Gov't*, 17 F.4th 563, 574 (5th Cir. 2021) (quoting *Cinel v. Connick*, 15 F.3d 1338, 1345 (5th Cir. 1994)) ("An appellant abandons all issues not raised and argued in its initial brief on appeal.").

[6] Shell notes Spencer's use of the word "explicitly" is somewhat misleading. Truthfully, there is nothing in Spencer's response that can reasonably be interpreted as a request for leave to amend. *See generally* ROA.108-21.

claims for relief. *See* ROA.111 ("Plaintiff has pleaded plausible causes of action for both Religious Discrimination and Retaliation under Title VII. . . ."); ROA.114 ("Defendant's Motion should be denied because Plaintiff has plausibly pleaded causes of action for both religious discrimination and retaliation under Title VII. . . ."); ROA.117 ("Because Spencer has plausibly pleaded a cause of action for Religious Discrimination, and Defendant did not actually provide sufficient alternative accommodations, Plaintiff should be allowed to proceed with his claim of Religious Discrimination."); ROA.121 ("Plaintiff should be allowed to move forward with his claim of Retaliation, as he has plausibly pled his cause of action."); ROA.121 ("Plaintiff's Original Complaint did state a claim upon which relief can be granted.").

On May 17, 2023, Shell filed its reply in support of its motion to dismiss. ROA.127-31. Shell devoted a large portion of its reply to pointing out the novel allegations Spencer made in his response to its motion to dismiss that were not alleged in the complaint. ROA.127-28. Indeed, Shell even went as far as to criticize Spencer for making additional allegations instead of seeking leave to amend his complaint. ROA.127 ("Plaintiff bases his conclusion largely on previously unpled allegations

outside of his Original Complaint and his own subjective belief. Plaintiff does not, however, seek leave to replead. The Court should thus disregard Plaintiff's contentions and instead dismiss his claims."). Still, Spencer made no attempt to replead.

On March 25, 2024, the district court granted Shell's motion to dismiss with prejudice. ROA.135-47. At that time, Shell's motion to dismiss had been pending for more than 11 months, ROA.58-94, and more than 10 months had passed since Shell filed its reply pointing out that Spencer's novel allegations were not properly before the district court. ROA.127-28. Spencer plainly refused to amend his pleadings despite ample notice that his complaint was grossly deficient.

In its order, the district court correctly observed that Spencer's response "included facts he did not plead—or at least plead with clarity—in his Complaint." ROA.136. The district court also noted that "[n]ew facts submitted in response to a motion to dismiss to defeat the motion are not incorporated into the original pleadings." ROA.136. Despite the fact that Spencer's unpled allegations were not properly before the district court, it explained that "even considering these additional facts, the

Court finds that Defendant's Motion should be granted." ROA.136. This appeal followed. ROA.152.

## III.  NEW ALLEGATIONS

Once again, Spencer asserts additional and new facts on appeal.[7] *See, e.g.*, App. Brf. 18–21 (detailing multiple pages of facts that Spencer admits did not appear in his complaint). Importantly, none of these allegations appear in Spencer's complaint and are therefore not properly before this Court. ROA.136. Moreover, the additional and new facts Spencer asserts on appeal are not the same as the unpled allegations asserted in

---

[7] Shell notes Spencer's co-mingling of citations to the (1) complaint; (2) unpled allegations contained in Spencer's response to Shell's motion to dismiss; and (3) novel allegations presented on appeal are misleading. *See* App. Brf. 5–21. Although Spencer generally makes clear when an allegation is presented for the first time on appeal, he does not distinguish between allegations that appear in the complaint and unpled allegations contained in his response to Shell's motion to dismiss. *See, e.g.*, App. Brf. 9 (stating "Spencer began working for SPLC on July 10, 2022" and citing only to Spencer's response to Shell's motion to dismiss without clarifying that the allegation is not found in the complaint); App. Brf. 42-43 (referring generally to allegations "appearing in the record" without clarifying whether the allegations he refers actually appear in the complaint). Importantly, neither the unpled allegations from Spencer's response to Shell's motion to dismiss nor the novel allegations presented for the first time on appeal are properly before this Court. The only allegations Spencer makes that should be considered are those in the complaint, which appears on pages 5-11 of the record. *See* ROA.5-11.

response to Shell's motion to dismiss and, at times, conflict with his response.

For example, throughout his brief, Spencer alleges he resigned from Shell in lieu of termination of employment. App. Brf. 5, 9, 12, 15, 20–21, 35–36, 40, 42, 53. But Spencer's allegation that he resigned is contrary to both his complaint and the unpled allegations in his response to Shell's motion to dismiss. In his complaint, Spencer made no mention of having changed job positions at all, let alone having resigned. *See* ROA.5-11. By contrast, in his response, Spencer claimed he "*transitioned* to [Shell Pipeline] on July 10th." ROA.123 (emphasis added). More specifically, he affirmatively represented that he did *not* resign: "Spencer was *transferred to a different position* . . ." ROA.113 (emphasis added); *see also* ROA.114 (Spencer "found a position with [Shell Pipeline] . . ."); ROA.115 (same); ROA.116 (Spencer "found a position with [Shell Pipeline] offshore *and was granted a religious accommodation* . . .") (emphasis added).

Despite those unpled representations from Spencer's response below, he now asserts "[Shell] never offered Spencer any reassignment." App. Brf. 42. That is demonstrably false. ROA.113-15, 123. He additionally criticizes Shell for making "cheeky" arguments, which he incorrectly

trivializes as a mere technical deficiency: "[Shell]'s argument that Spencer didn't allege he resigned to avoid termination because of his religious beliefs is a cheeky move considered [Shell] knew very well that's exactly what happened. [Shell]'s argument rings more as a 'technical deficiency' to plaintiff's complaint . . . ." App. Brf. 35. But there is nothing in the record to support Spencer's revisionist retelling of the facts and novel arguments on appeal. In fact, the unpled allegations in the record suggest the opposite of what Spencer now argues.

Spencer additionally accuses Shell of violating its own vaccination policy by allowing him to fly on helicopters while unvaccinated once he transferred to Shell Pipeline. App. Brf. 13 (referring to "a seeming violation of [Shell]'s own vaccination policy"). Again, his argument contradicts his unpled representation from his response to Shell's motion to dismiss that Shell granted him a religious accommodation when he was permitted to transfer to Shell Pipeline. ROA.116 (Spencer "found a position with [Shell Pipeline] offshore *and was granted a religious accommodation . . .*") (emphasis added). Spencer cannot ask this Court to consider unpled allegations while simultaneously asking it to ignore others from his prior

13

response. This Court should ignore his improper request, which is counter-factual and lacks legal support.

## SUMMARY OF THE ARGUMENT

As Spencer did at the district court, he devotes a considerable portion of his brief arguing additional facts that do not appear in his complaint or response to Shell's motion to dismiss. By arguing so many additional facts, Spencer "essentially concede[s] that [his] prior allegations were indeed deficient." *Stevens*, 17 F.4th at 574.

Contrary to his contentions, Spencer has already presented his best case. In response to Shell's motion to dismiss, Spencer declared on at least five separate occasions that his complaint adequately stated his claims for relief. Even after Shell reinforced the deficiencies that plagued Spencer's complaint in its reply, and pointed out other issues concerning unpled allegations in his response, Spencer refused to amend his complaint and made no request for leave to do so. Shell's motion to dismiss was pending before the district court for over 11 months. Despite ample opportunity to amend his complaint while the motion to dismiss was pending, and plenty of notice of the specific deficiencies contained in his pleadings, Spencer refused to do so. Moreover, in dismissing Spencer's claims, the district court explicitly evaluated his unpled allegations even though it was under no obligation to consider them. Spencer's argument

15

that he was denied the opportunity to plead his best case is without merit.

The district court did not err in dismissing Spencer's claim for failure to accommodate. Shell announced a mandatory vaccine policy for offshore employees working in the Gulf of Mexico. Spencer sought a blanket religious accommodation allowing him to continue working offshore without being vaccinated. Shell individually reviewed his request and determined it was unable to provide Spencer's preferred accommodation. Instead, Shell provided Spencer an alternative temporary accommodation of 60 days to continue working offshore while unvaccinated, during which time he could look for other open positions within the Company that were not subject to the mandatory vaccine policy (*i.e.*, any position that was not an offshore position in the Gulf of Mexico). Thereafter, Shell provided Spencer even more time to continue looking for another position.

As alleged in the complaint, Shell offered Spencer an effective alternative accommodation—on more than one occasion—which eliminated the conflict between his religious beliefs and Shell's vaccination policy. Moreover, Spencer is a current employee and has not even alleged

that he was discharged or otherwise suffered an actionable adverse employment action as a result of Shell's vaccine policy. Accordingly, the district court correctly dismissed Spencer's Title VII discrimination claim with prejudice.

The district court also did not err in dismissing Spencer's retaliation claim with prejudice. When Shell provided Spencer his initial 60-day accommodation on January 14, 2022—as well as when it announced the vaccine policy in November 2021—it warned that if he was not in compliance with the mandatory vaccination policy by the end of the accommodation period, he would be subject to potential discipline, up to and including dismissal, in accordance with Shell policies. Spencer nevertheless asserts that he was retaliated against for filing a Charge when he was subsequently reprimanded. This claim, however, has no basis in law because Shell warned Spencer that he would be disciplined more than five months *before* he filed his Charge.

Spencer additionally claims he was retaliated against when Shell placed him on a PIP. But Shell issued the PIP for legitimate reasons. More importantly, the PIP did not deter Spencer from engaging in protected activity as evidenced by the fact that he filed the Amended Charge

just 14 days after the PIP was issued. The PIP therefore does not consti-
tute an adverse employment action for purposes of Spencer's Title VII
retaliation claim. Because Spencer failed to plausibly allege causation, or
an adverse employment action in the first instance, the district court cor-
rectly dismissed his Title VII retaliation claim with prejudice.

## ARGUMENT

### I. STANDARD OF REVIEW.

"This Court reviews *de novo* a district court's grant of a motion to
dismiss." *Sligh v. City of Conroe*, 87 F.4th 290, 297 (5th Cir. 2023). To
defeat a motion to dismiss under Rule 12(b)(6), a plaintiff must plead
"enough facts to state a claim to relief that is plausible on its face." *Bell
Atlantic Corp. v. Twombly*, 550 U.S. 544, 570 (2007). A claim is plausible
where the plaintiff pleads sufficient factual content to support the rea-
sonable inference that the defendant is liable for the misconduct alleged.
*Ashcroft v. Iqbal*, 556 U.S. 662 (2009). A complaint need not contain de-
tailed factual allegations, but it must set forth "more than labels and con-
clusions, and a formulaic recitation of the elements of a cause of action
will not do." *Twombly*, 550 U.S. at 555. The factual allegations in the
complaint must be enough to raise a right to relief above the speculative

level. *Id.* "[W]here the well-pleaded facts do not permit the court to infer more than the mere possibility of misconduct," they fall short of showing that the pleader is entitled to relief. *Iqbal*, 556 U.S. at 679.

"When deciding a Rule 12(b)(6) motion to dismiss, the district court is limited to the allegations set forth in the complaint." *Roebuck v. Dothan Sec., Inc.*, 515 F. App'x 275, 280 (5th Cir. 2013). But, in making its ruling, the Court may "also consider '[d]ocuments that a defendant attaches to a motion to dismiss . . . if they are referred to in the plaintiff's complaint and are central to her claim.'" *Sligh*, 87 F.4th at 297 (quoting *Villareal v. Wells Fargo Bank, N.A.*, 817 F.3d 763, 766 (5th Cir. 2016) (alteration in original)). Courts do not, however, consider allegations that are raised for the first time in response to a motion to dismiss. *See Roebuck*, 515 F. App'x at 280. Such allegations are not properly incorporated into the pleadings: "[I]t is axiomatic that the complaint may not be amended by the briefs in opposition to a motion to dismiss." *Id.* (quoting *Car Carriers, Inc. v. Ford Motor Co.*, 745 F.2d 1101, 1107 (7th Cir. 1984)).

## II.    THE COURT SHOULD AFFIRM THE DISTRICT COURT'S ORDER GRANTING SHELL'S MOTION TO DISMISS.

Spencer argues that he should be permitted an opportunity to return to the district court and amend his complaint so he can plead his "best case." App. Brf. 26–34. In the alternative, Spencer argues the district court failed to accurately apply the law in granting Shell's motion to dismiss on his discrimination and retaliation claims. App. Brf. 34–53. For the reasons discussed above and below, as well as those articulated by the district court, Spencer's arguments are without merit.

### A.    Spencer has already presented his best case and never sought leave to replead despite ample opportunity and notice that his pleadings were deficient.

Spencer's principle argument is that he has additional facts to support his claims that did not appear in the complaint. App. Brf. 18–23, 26–34. Accordingly, he believes it would be equitable to allow him to return to the district court to amend his pleadings. *See* App. Brf. 29 (referring generally to the "interests of justice"). Spencer is undoubtedly in good company. Presumably all plaintiffs whose claims are dismissed with prejudice wish they could return to the district court and conjure up addi-

tional facts they believe bolster their claims beyond the pleading standards. But that is—of course—insufficient justification to overturn the district court's order.

In support of his argument, Spencer improperly devotes page after page to discussing new facts that admittedly do not appear in his complaint or response to Shell's motion to dismiss. *See, e.g.*, App. Brf. 18–21 (detailing multiple pages of facts that Spencer admits did not appear in his complaint). As this Court has noted, by arguing so many additional facts, Spencer "essentially concede[s] that [his] prior allegations were indeed deficient." *Stevens*, 17 F.4th at 574.

Setting aside the fact that Spencer undermines the legitimacy of his other arguments on appeal by arguing so many additional and new facts, his principle argument is without merit. To be sure, Spencer has failed to even articulate an applicable standard by which this Court can evaluate his argument. *See generally* App. Brf. 26–34. At times Spencer seems to advocate for a pro se pleading standard despite the fact he was admittedly represented by counsel at all stages of litigation. *See* App. Brf. 29 (discussing treatment of pro se complaints while acknowledging "Spencer wasn't acting pro se, of course, he was admittedly represented

by his former lawyer at the time"). Elsewhere, Spencer relies heavily on the idea that he has not had the opportunity to plead his so-called "best case." App. Brf. 26–34. But the "best case" exception seemingly applies only to dismissals with prejudice the district court issues *sua sponte* and dismissals of pro se complaints. *See, e.g.*, *Stankevich v. Miss. Coll. Sch. of Law*, No. 24-60087, 2024 WL 4056610, *3–4 (5th Cir. Sept. 5, 2024) (applying the best case exception to dismissal of pro se complaint); *Carver v. Atwood*, 18 F.4th 494, 498 & n.* (5th Cir. 2021) (discussing the best case exception to *sua sponte* dismissals with prejudice); *Brown v. Taylor*, 829 F.3d 365, 370 (5th Cir. 2016) ("This rule against no-notice *sua sponte* dismissal is subject to two exceptions: if the dismissal is without prejudice, or if the plaintiff has alleged his best case."); *Gonzalez v. Thaler*, 351 F. App'x 946, 948 (5th Cir. 2009) (applying the best case exception to dismissal of pro se complaint); *Bazrowx v. Scott*, 136 F.3d 1053, 1054 (5th Cir. 1998) (explaining that the best case exception to *sua sponte* dismissals ensures "the procedure employed is fair" with respect to court-initiated dismissals). Still, Spencer is mistaken.

Contrary to his arguments, Spencer has undeniably pled his best case and the "procedure employed [wa]s fair." *See Bazrowx*, 136 F.3d at

1054. "A plaintiff has 'alleged his best case' if the plaintiff (1) 'repeatedly declared the adequacy of that complaint in . . . response to [the] defendant's motion to dismiss' and (2) 'refused to file a supplemental complaint even in the face of a motion to dismiss.'" *Carver*, 18 F.4th at 498 n.* (quoting *Brown*, 829 F.3d at 370); *see also Dark v. Potter*, 293 F. App'x 254, 257 (5th Cir. 2008) ("While a precise definition of a plaintiff's 'best case' is elusive, this court often assumes a plaintiff asserts its best case after the plaintiff is 'apprised of the insufficiency' of the complaint.") Both considerations occurred here.

In response to Shell's motion to dismiss, Spencer repeatedly declared the adequacy of his complaint. Indeed, he did so at least five times in his response. *See* ROA.111 ("Plaintiff has pleaded plausible causes of action for both Religious Discrimination and Retaliation under Title VII. . . ."); ROA.114 ("Defendant's Motion should be denied because Plaintiff has plausibly pleaded causes of action for both religious discrimination and retaliation under Title VII. . . ."); ROA.117 ("Because Spencer has plausibly pleaded a cause of action for Religious Discrimination, and Defendant did not actually provide sufficient alternative accommodations,

Plaintiff should be allowed to proceed with his claim of Religious Discrimination."); ROA.121 ("Plaintiff should be allowed to move forward with his claim of Retaliation, as he has plausibly pled his cause of action."); ROA.121 ("Plaintiff's Original Complaint did state a claim upon which relief can be granted.").

Spencer likewise refused to amend his complaint in the face of Shell's motion to dismiss. Shell initially moved to dismiss Spencer's complaint for failure to state a claim on April 19, 2023. ROA.58-94. Spencer made no effort to amend his complaint at that time. ROA.108-21; *see* App. Brf. 22 (admitting Spencer did not request leave to amend his complaint). Notably, Spencer could have amended his complaint as a matter of course and without requesting leave of court. *See* Fed. R. Civ. P. 15(a)(1)(B) (allowing a plaintiff to amend the complaint as a matter of course within "21 days after service of a motion under Rule 12(b)"). Still, he failed to do so. Instead, Spencer filed his response to Shell's motion to dismiss for failure to state a claim on May 10, 2023. ROA.108-21. In that response, Spencer made numerous novel factual allegations that were not mentioned in his complaint. *See* App. Brf. 12.

Shell then filed its reply in support of its motion to dismiss on May 17, 2023. ROA.127-31. In its reply, Shell explicitly objected to the novel allegations Spencer made in response to its motion to dismiss that were not alleged in the complaint. ROA.127-28. Shell additionally criticized Spencer for making additional allegations instead of seeking leave to amend his complaint. *See* ROA.127. Still, Spencer made no attempt to replead. *See* App. Brf. 22 (admitting Spencer did not request leave to amend his complaint).

When the district court eventually dismissed Spencer's claims, ROA.135-47, Shell's motion to dismiss had been pending for more than 11 months, ROA.58-94, and more than 10 months had passed since Shell filed its reply pointing out that Spencer's novel allegations were not properly before the district court. ROA.127-28. Spencer plainly refused to amend his pleadings despite ample notice that his complaint was grossly deficient. But, despite the fact that Spencer's unpled allegations were not properly before the district court, the court's order makes clear that it considered the additional factual assertions. ROA.136.

Spencer had opportunity after opportunity to amend his complaint and refused to do so while simultaneously arguing he adequately stated his

claims. He also failed to request leave to amend his complaint—even in the alternative—which alone is sufficient grounds to reject his argument on appeal. *See* App. Brf. 28 (quoting *Joseph v. Bach & Wasserman, LLC*, 487 F. App'x 173, 178 (5th Cir. 2012)). Under the facts of this case, it cannot be said that Spencer was denied the opportunity to plead his best case or otherwise treated unfairly. This Court should therefore affirm the district court's order dismissing Spencer's claims with prejudice.

### B.    The district court correctly held Spencer failed to state a claim of religious discrimination for failure to accommodate under Title VII.

Title VII makes it unlawful for an employer to "discriminate against any individual with respect to his compensation, terms, conditions, or privileges of employment, because of such individual's . . . religion." 42 U.S.C. § 2000e-2(a)(1). Under Title VII, employers have a statutory obligation to make reasonable accommodations for the religious observations of their employees, unless doing so would create an undue hardship. *Eversley v. MBank Dall.*, 843 F.2d 172, 175 (5th Cir. 1988) (quoting *Trans World Airlines, Inc. v. Hardison*, 432 U.S. 63, 75 (1977)). A plaintiff asserting a failure to accommodate claim under Title VII must demonstrate: "(1) that he had a bona fide religious belief that conflicted

with an employment requirement; (2) that he informed the employer of his belief; and (3) that he was discharged for failing to comply with the conflicting employment requirement." *Antoine v. First Student, Inc.*, 713 F.3d 824, 831 (5th Cir. 2013).

A reasonable accommodation of an employee's religion is one that "eliminates the conflict between employment requirements and religious practices." *Ansonia Bd. of Educ. v. Philbrook*, 479 U.S. 60, 70 (1986). Critically, the employer must only offer a *reasonable accommodation*, *not* the accommodation *preferred* by the employee or any specific accommodation. *Id.* at 69 (noting the language of Title VII dictates that "*any* reasonable accommodation by the employer is sufficient to meet its accommodation obligation" (emphasis added)); *see also Horvath v. City of Leander*, 946 F.3d 787, 791 (5th Cir. 2020) ("Once an employer has established that it offered a reasonable accommodation, even if that alternative is not the employee's preference, it has satisfied its obligation under Title VII as a matter of law."); *Bruff v. N. Miss. Health Servs., Inc.*, 244 F.3d 495, 501 (5th Cir. 2001) ("Title VII does not restrict an employer to only those means of accommodation that are preferred by the employee."); *Dachman v. Shalala*, 9 F. App'x 186, 192 (4th Cir. 2001) ("While an employer has a

duty to accommodate an employee's religious beliefs, the employer does not have a duty to accommodate an employee's preferences."); *Tiano v. Dillard Dep't Stores, Inc.*, 139 F.3d 679, 682 (9th Cir. 1998) ("Title VII does not protect secular preferences."). Indeed, in *Philbrook*, the Supreme Court expressly recognized that it did not want to create a framework that would incentivize employees "to hold out for the most beneficial accommodation" even after the employer offers a reasonable accommodation. *Philbrook*, 479 U.S. at 69.

When an employer offers the employee a reasonable accommodation, it has, as a matter of law, satisfied its obligations under Title VII: "[W]here the employer has already reasonably accommodated the employee's religious needs, the statutory inquiry is at an end. The employer does not need to show that each of the employee's alternative accommodations would result in undue hardship." *Id.* at 68–69. Employers may accommodate an employee in two distinct manners: "(1) an employee can be accommodated in his or her current position by changing the working conditions, or (2) the employer can offer to let the employee transfer to another reasonably comparable position where conflicts are less likely to arise." *Bruff*, 244 F.3d at 500.

The Fifth Circuit has already held that encouraging an employee to transfer to another position within the company that does not conflict with an employee's sincerely held religious beliefs and offering assistance toward that effort constitutes a reasonable accommodation. *Id.* at 502. In *Bruff*, the court considered whether a medical center adequately accommodated an employee who had a religious objection by giving the employee 30 days to find another position and directing an in-house employment counselor to assist the employee. *Id.* In holding that the accommodation offered was reasonable, the Fifth Circuit additionally held that, even "a significant reduction in salary . . . does not make [an alternative] accommodation unreasonable." *Id.*; *see also Vaughn v. Waffle House, Inc.*, 263 F. Supp. 2d 1075, 1083 (N.D. Tex. 2003) (employer reasonably accommodated an employee's request to be relieved of Sabbath work through transfer to a lower-paying job that did not require weekend work).

Spencer alleges in his complaint that Shell announced its mandatory vaccine policy for offshore employees on November 1, 2021, and that the vaccine policy went into effect on January 1, 2022. ROA.7, 83 (announcing the vaccine policy on November 1, 2021). On December 16, 2021, in response to the announced vaccine policy, Spencer states that he

submitted a request for accommodation based on his religious beliefs. ROA.7. Specifically, Spencer requested Shell provide him with a "permanent accommodation" that would exempt him from the vaccine requirements for working offshore. ROA.7, 9.

On January 14, 2022, Spencer claims Shell denied his request because it would cause an undue hardship. ROA.7-8. Spencer additionally states that Shell gave him from January 14, 2022 until May 2022 "to secure another position at Shell that was exempted from the vaccine mandate." ROA.7-8. On May 3, 2022, Spencer alleges Shell gave him an additional 60-day accommodation to find another position that was exempt from the vaccine mandate. ROA.8, 94.

In total, Spencer alleges Shell provided him a 183-day accommodation—from January 14, 2022 to July 16, 2022—to find another position within the company which did not conflict with his religious beliefs. ROA.7-8. The alternative accommodation Spencer alleges Shell provided him is more than six times as generous as the accommodation at issue in *Bruff*. In addition, Spencer alleges that Shell allowed him to return to work at the Robert Training Center, an onshore position exempt from the vaccine mandate, with pay. ROA.8, 80 ("On May 3, 2022, I was informed

by Lautrice 'Mac' Mclendon Shell Whale OM that I am now allowed to return to work at the Robert Training Center for another 60-days with pay."). While Spencer alleges that Shell informed him he would lose his job on July 16, 2022, if he failed to get vaccinated or be selected for another onshore position (ROA.8), he does *not* allege that Shell, in fact, terminated his employment. In fact, Spencer's response makes clear his employment was not terminated. ROA.113-15, 123, 141. Accordingly, Spencer's complaint not only fails to state a claim of religious discrimination, it affirmatively establishes Shell provided him with a legally sufficient alternative accommodation.[8] Therefore, the Court should affirm the district court's order dismissing Spencer's claim for religious discrimination with prejudice.

---

[8] *See Hinton v. Amazon.com.dedc, LLC*, 72 F. Supp. 3d 685, 692 (S.D. Miss. 2014) ("[D]ismissal without leave to amend is appropriate where any amendment would be futile or the plaintiff has presented his best case.").

**C.    The district court correctly held Spencer failed to state a claim for retaliation under Title VII.**

Title VII prohibits employers from retaliating against employees based on an employee's opposition to employment discrimination or complaint of discrimination. *See* 42 U.S.C. § 2000e-3(a). To establish a prima facie case of retaliation, the employee must show that (1) he participated in an activity protected under the statute; (2) his employer took an adverse employment action against him; and (3) a causal connection exists between the protected activity and the adverse action. *McCoy v. City of Shreveport*, 492 F.3d 551, 556–57 (5th Cir. 2007), *abrogated on other grounds by Hamilton v. Dallas County*, 79 F.4th 494 (5th Cir. 2023).

Spencer claims in his complaint that he engaged in protected activity when he filed his Charge with the EEOC on April 4, 2022. ROA.8, 9. As a result of filing that Charge, Spencer claims Shell retaliated against him in two different ways: (1) by placing him on a PIP on April 21, 2022, and (2) issuing a termination warning on May 3, 2022. App. Brf. 9, n.4; ROA.8, 9, 88-94. Spencer failed to plausibly establish the existence of an adverse employment action with respect to the PIP and causation with

32

respect to the termination warning. The district court therefore correctly dismissed his retaliation claim with prejudice.

### 1. Spencer's allegations concerning the performance improvement plan fail to plausibly establish a materially adverse action.

Title VII "protects an individual not from all retaliation, but from retaliation that produces an injury or harm." *Burlington N. & Santa Fe Ry. Co. v. White*, 548 U.S. 53, 67 (2006). This is an objective standard: "[A] plaintiff must show that a reasonable employee would have found the challenged action materially adverse, which in this context means it well might have dissuaded a reasonable worker from making or supporting a charge of discrimination." *Id.* at 68.

For purposes of retaliation claims under Title VII, this Court has held that a PIP does not constitute an adverse employment action "where colorable grounds exist for disciplinary action or *where the employee continues to engage in protected activity*." *Jackson v. Honeywell Int'l, Inc.*, 601 F. App'x 280, 286 (5th Cir. 2015) (emphasis added). Likewise, "[w]ritten reprimands or warnings . . . generally are not adverse employment actions, particularly when they are issued *in response to work-rule violations* and *do not dissuade the employee from pursuing complaints*."

*Brooks v. Hou. Indep. Sch. Dist.*, 86 F. Supp. 3d. 577, 586 (S.D. Tex. 2015)
(emphasis added).

Relying on *Jackson* and Spencer's deficient pleadings, the district
court carefully explained its multifaceted justification for refusing to rely
on the allegations concerning the PIP to support his retaliation claim:

> Defendant outlines several grounds for placing Plaintiff on a
> PIP: (1) "failure to follow the company life savings rules and
> exhibit the company core value of honesty," (2) "a pattern in
> [Plaintiff's] failure to comply with medical documentation re-
> quirements," (3) "[f]ailure to meet expectations and delivera-
> bles," and (4) "[c]ollaborative, teamwork, and interpersonal
> behaviors." Plaintiff does not address the PIP's various
> grounds in his Complaint or Response. Moreover, Plaintiff
> "continued to engage in protected activity after being placed
> on the PIP" by amending his EEOC Charge on May 5, 2022.

ROA.146-47 (citations omitted) (alterations in original).

On appeal, Spencer argues that the district court's interpretation
of *Jackson* precludes any plaintiff from successfully asserting a retalia-
tion claim because "[a]ll Title VII claimants *must* file a Charge with the
EEOC or local state agency alleging retaliation to further prosecute that
claim in court." App. Brf. 49–50 (emphasis in original). Spencer is incor-
rect and cites no authority to support his argument. *See* App. Brf. 49–50.
His lack of legal support is unsurprising as this Court has consistently

held otherwise. *Gupta v. E. Tex. State Univ.*, 654 F.2d 411, 414 (5th Cir. 1981) ("[W]e hold that it is unnecessary for a plaintiff to exhaust administrative remedies prior to urging a retaliation claim growing out of an earlier charge."); *Eberle v. Gonzales*, 240 F. App'x 622, 628 (5th Cir. 2007) (clarifying that *Gupta* applies when the alleged retaliation occurs after the filing of the EEOC charge); *Gottlieb v. Tulane Univ. of La.*, 809 F.2d 278, 284 (5th Cir. 1987) ("Requiring [plaintiff] to resort to the EEOC a second time on a retaliation claim would serve no purpose 'except to create additional procedural technicalities when a single filing would comply with the intent of Title VII.'").

Spencer also contends he "alleged the PIP was baselessly issued and he did nothing wrong." App. Brf. 24. He therefore argues "the district court should not have resolved that factual dispute against him on a Rule 12(b)(6) motion to dismiss." App. Brf. 24. That is plainly unsupported by the record and, unsurprisingly, Spencer again does not cite to the complaint or otherwise cite any other authority in the record to support his assertion. App. Brf. 24. Elsewhere, also without citation to the complaint, Spencer asserts the PIP was pretextual: "However, prior to being placed on the PIP, Spencer had a 'clear disciplinary record.' ROA.120. Spencer

denies he engaged in any poor performance and alleges the PIP was merely pretext to threaten and retaliate against him for filing his Charge of Discrimination two weeks earlier. ROA.120." App. Brf. 8. But these citations are to Spencer's response to Shell's motion to dismiss. ROA.120. There is no support for Spencer's assertions on appeal in the complaint. *See generally* ROA.5–11.

Accordingly, the district court did not resolve a factual dispute against Spencer. It merely noted his pleadings failed to plausibly allege the PIP was pretextual. ROA.146-47. The district court was correct and rightly held that Spencer's allegations regarding the PIP were insufficient to support his claim for retaliation.

> **2. Spencer's allegations concerning the termination warning are contradictory and fail to plausibly establish causation.**

To plead a prima facie claim of retaliation, Spencer must articulate facts sufficient to show a causal nexus between his Charge and termination warning. Importantly, "Title VII retaliation claims must be proved according to traditional principles of but-for causation, not the lessened [motivating factor] causation test[.]" *Brandon v. Sage Corp.*, 808 F.3d 266, 270 (5th Cir. 2015) (alterations in original).

In support of his retaliation claim, on appeal, Spencer alleges "on May 3, 2022, one of Spencer's . . . managers named Lautrice McLendon issued Spencer a written termination warning indicating Spencer was scheduled for termination effective July 18 [sic] unless he underwent vaccination or found another job." App. Brf. 8. But Spencer also claims Shell told him back on January 14, 2022, "that his employment would be terminated if he failed to secure another position at Shell that was exempted from the vaccine mandate by May 2022." ROA.7-8. According to Spencer's complaint, Shell warned him that his employment would be terminated if he failed to abide by the mandatory vaccine policy *80 days before he filed his Charge*. Accordingly, by issuing the complained of termination warning, Shell was merely carrying out its previously planned employment decisions in a manner which defies causation and prevents retaliation. *See, e.g.*, *Alamo Heights Indep. Sch. Dist. v. Clark*, 544 S.W.3d 755, 790 (Tex. 2018) ("Carrying out a previously planned employment decision is no evidence of causation."); *see also Manning v. Chevron Chem. Co.*, 332 F.3d 874, 883 & n.6 (5th Cir. 2003) (a plaintiff must first "demonstrate that the employer knew about the employee's protected activity").

The district court agreed and additionally noted that Spencer cannot base his retaliation claim on the termination warning because Shell had no knowledge of his April 5, 2022 Charge, when it warned him of the consequences for non-compliance with the mandatory vaccine policy on January 14, 2022:

> To the extent Plaintiff alleges that he was retaliated against by way of Defendant giving him "a timeline by which he had to get vaccinated to avoid termination," Plaintiff has failed to allege the causation element of his retaliation claim. Given that Plaintiff alleges Defendant informed him on January 14, 2022, that he would have to secure another position within the company or get vaccinated to avoid termination, Plaintiff cannot "demonstrate that [Defendant] knew about the [Plaintiff's] protected activity," because the EEOC Charge was filed months later.

ROA.143 (quoting *Manning*, 332 F.3d at 883).

The district court is again correct. Because Spencer failed to establish the adverse action and causation elements of his retaliation claim, the district court rightly dismissed his claim with prejudice. This Court should therefore affirm the district court's order.

## CONCLUSION

The able district judge analyzed the issues in this case correctly and reached the right conclusions. Spencer's arguments to the contrary fail

for all of the reasons addressed by the district court and as further explained above. The Court should affirm the judgment of the district court.

Dated: October 29, 2024.

Respectfully submitted,

s/ Anthony J. Campiti
Anthony J. Campiti
Weston J. Mumme
Holland & Knight LLP
One Arts Plaza
1722 Routh Street
Suite 1500
Dallas, Texas 75201
(214) 969-1700
(214) 969-1751 (Fax)
tony.campiti@hklaw.com
weston.mumme@hklaw.com

Attorneys for Appellee
Shell Exploration & Production Company

## CERTIFICATE OF COMPLIANCE WITH RULE 32(A)

Certificate of Compliance with Type-Volume Limitation,
Typeface Requirements, and Type Style Requirements

1.  The brief complies with the type-volume limitations of Fed. R. App. P. 32 because, excluding the parts of the document exempted by Rule 32(f), this brief contains 6,926 words.

2.  The brief complies with the typeface requirements of Fed. R. App. P. 32(a)(5) and the type style requirements of Fed. R. App. P. 32(a)(6) because: this brief has been prepared in proportionally spaced typeface using Microsoft Word 2016 in Century Schoolbook font, 14 point.

s/ Anthony J. Campiti
Anthony J. Campiti
Attorney for Appellee
Shell Exploration & Production Company

40