CASE NO. 24-20173

UNITED STATES COURT OF APPEALS
FIFTH CIRCUIT

TIM SPENCER,
Plaintiff – Appellant

v.

SHELL EXPLORATION & PRODUCTION COMPANY,
Defendant – Appellee

ON APPEAL FROM THE UNITED STATES DISTRICT COURT FOR
THE SOUTHERN DISTRICT OF TEXAS (HOUSTON DIVISION)
USDC NO. 4:22-CV-4166

**APPELLANT'S REPLY BRIEF**

Respectfully submitted:

**THE LAW OFFICE OF
KEVIN S. VOGELTANZ, LLC**
Kevin S. Vogeltanz (Bar #32746)
428 W. 21st Ave. / Covington, LA 70433
Office: (504) 275-5149
Fax: (504) 910-1704
Email: vogeltanz@gmail.com

*Attorney for Plaintiff-Appellant Tim Spencer*

# Table of Contents

Table of Contents......................................................................................iii

Table of Authorities...................................................................................ii

Reply Argument........................................................................................ 1

1.  SEPCO's reading of *Bruff* is fundamentally flawed and irreconcilable with the text of Title VII's reasonable-accommodation provision and its decisional law........................................................ 1

2.  Plaintiff plausibly alleged both a retaliatory act and prima facie causation........................................................................................ 5

3.  Plaintiff should have been offered at least one chance to amend his complaint given the parties' back and forth attempts to introduce new evidence and allegations in the case ...................................... 10

Conclusion............................................................................................... 15

Certificate of Service .............................................................................. 17

Certificate of Compliance ....................................................................... 18

i

# Table of Authorities

## *Cases*

*Ansonia Bd. of Educ. v. Philbrook,*
497 U.S. 60 (1986) ............................................................ 2

*Bruff v. N. Miss. Health Servs, Inc.,*
244 F.3d 495 (5th Cir. 2001) ................................... 1, 3, 4

*Burlington N. & Santa Fe Ry. Co. v. White,*
548 U.S. 53 (2006) ............................................................ 6

*Clark v. Amoco Prod. Co.,*
794 F.2d 967 (5th Cir. 1986) ........................................... 2

*Dark v. Potter,*
293 Fed. Appx. 254 (5th Cir. 2008).............................. 11

*Davis v. Fort Bend Cty.,*
765 F.3d 480 (5th Cir. 2014) ........................................... 2

*Douglas v. DePhillips,*
740 Fed.Appx. 403 (5th Cir. 2018).............................. 13

*E.E.O.C. v. Universal Mfg. Corp.,*
914 F.2d 71 (5th Cir. 1990) ............................................. 3

*Great Plains Tr. Co. v. Morgan Stanley Dean Witter & Co.,*
313 F.3d 305 (5th Cir. 2002) ......................................... 10

*Groff v. DeJoy,*
600 U.S. 447 (2023) .......................................................... 3

*Gupta v. E. Texas State Univ.,*
654 F.2d 411 (5th Cir. 1981) ........................................... 7

*In re Fort Worth Chamber of Commerce,*
100 F.4th 528 (5th Cir. 2024) ....................................... 12

*Sherrod v. American Airlines, Inc.,*
132 F.3d 1112 (5th Cir. 1998) ......................................... 9

*U.S. Enercorp, Ltd. v. SDC Montana Bakken Expl., LLC,*
    966 F.Supp.2d 690 (W.D. Tex. 2013) ............................................... 2

### *Statutes*

42 U.S.C. § 2000e(j) ........................................................................ 4

### *Rules*

Fed. R. Civ. P. 15 ........................................................................ 11

## Reply Argument

**1.    SEPCO's reading of *Bruff* is fundamentally flawed and irreconcilable with the text of Title VII's reasonable-accommodation provision and its decisional law**

At bottom, the failure-to-accommodate claim in this case requires the Court to decide what an employer must do to "accommodate" an employee who objects for religious reasons to company policy.  The COVID-19 pandemic hyper-accelerated this relatively niche field of discrimination law as thousands of employers across the United States imposed vaccination policies which thousands more American workers objected to on religious grounds.

On brief, Shell Exploration & Production Company ("SEPCO") takes a narrow view on this question, principally citing to one case – this Court's decision in *Bruff v. N. Miss. Health Servs, Inc.*, 244 F.3d 495 (5th Cir. 2001) – and declaring that an employer sufficiently accommodates an employee as a matter of law by giving them some stretch of time to find another job before the company fires them.  SEPCO then says that, because it gave Spencer several months to find another job before scheduling him for termination, it did all that Title VII required it to do.

SEPCO's wrong on the law, and this Court's decision in *Bruff* – while getting the decision right in that case based on its specific factual record – is simply inapplicable to the facts of this case.

First, to answer the fundamental question presented, Title VII requires employers to provide a reasonable accommodation to their employees that eliminates the conflict between religious belief and workplace policy – unless all possible accommodations would impose an undue hardship on the employer. *See Ansonia Bd. of Educ. v. Philbrook*, 497 U.S. 60, 70 (1986).

Second, under Title VII, Shell's undue-hardship defense must be proven as an affirmative defense. *See Davis v. Fort Bend Cty.*, 765 F.3d 480, 485 (5th Cir. 2014).

Third, a district court errs by granting a preliminary motion to defense based on a defendant's purported affirmative defense unless, based "on the face of the pleadings . . . the viability of the affirmative defense [is] essentially . . . unquestionable." *U.S. Enercorp, Ltd. v. SDC Montana Bakken Expl., LLC*, 966 F.Supp.2d 690, 697 (W.D. Tex. 2013), *citing Clark v. Amoco Prod. Co.*, 794 F.2d 967, 970 (5th Cir. 1986).

Fourth, we know that very large corporations like Shell will have greater difficulty proving an "undue hardship" related to a single rank-and-file employee's religious objection because the Supreme Court has now clarified an undue hardship in Title VII cases "is shown when a burden is substantial in the overall context of an employer's business." *Groff v. DeJoy*, 600 U.S. 447, 468 (2023). Obviously SEPCO's "overall" business is significant and wide ranging.

Fifth, this Court has held whether a Title VII religious accommodation is "reasonable" or not is a question of fact that must ordinarily be resolved by the fact-finder. *E.E.O.C. v. Universal Mfg. Corp.*, 914 F.2d 71 (5th Cir. 1990) ("We need not embark on a long discussion of what is or is not 'reasonable' accommodation. Ordinarily, questions of reasonableness are best left to the fact finder").

Finally, in this overall context, SEPCO's reliance on *Bruff* is grossly misplaced because *Bruff* simply determined whether one particular employer took reasonable steps to accommodate one particular, recalcitrant employee based on the unique facts of that case. Yes, this Court in *Bruff* held that an employer who had provided **multiple** good-faith accommodations to an employee who rebuffed each one was

3

eventually permitted to order that employee to find another job or face termination because there was simply no other options left on the table. *Bruff* depicts an employer who exhausts all possible reasonable accommodations before ordering its employee to find other work or face termination. Those certainly aren't the record allegations in this case.

In stark contrast, SEPCO simply skips the most important parts of *Bruff* – multiple good faith accommodations that would have permitted the employee to keep her job while resolving her religious objections – to arrive at the conclusion that, as a purported matter of law, any employer may escape all liability under Title VII by simply demanding from the jump that its employee find another job, quit, or be fired. That sort of thinking perverts the entire point of Title VII's religious-accommodation amendment codified at 42 U.S.C. § 2000e(j) and essentially forces all religiously observant Americans to choose between their faith and their jobs in a one-size-fits-all package.

Title VII demands flexibility by both employers and employees in the reasonable-accommodation analysis. SEPCO's reading of *Bruff* strips away all flexibility for a rigid, bright-line rule. This Court in *Bruff* said

nothing of the sort, and this Court should not take Shell's misguided invitation to declare this the draconian rule today.

## 2. Plaintiff plausibly alleged both a retaliatory act and prima facie causation

Spencer filed his first EEOC Charge of Discrimination on April 5, 2022. ROA.78. Shortly thereafter, SEPCO placed him on a Performance Improvement Plan ("PIP") on April 21, 2022 — just three weeks later — and issued Spencer an explicit termination warning on May 3, 2022, scheduling Spencer's termination for July 16, 2022. ROA.94 These actions, taken in rapid succession, plausibly allege a direct and retaliatory response to Spencer's protected activity. Importantly, the record is devoid of any allegation corroborating that Spencer was a poor performer who warranted such measures. On May 5, 2022, in response to these retaliatory acts, Spencer amended his EEOC Charge to include his retaliation claim.

SEPCO contends, and the district court agreed, that the PIP – despite carrying a clear termination warning – was not materially adverse. This argument ignores settled precedent that an employment action is adverse in the retaliation context if it would dissuade a reasonable worker from engaging in protected activity. *Burlington N. &*

*Santa Fe Ry. Co. v. White*, 548 U.S. 53, 68-70 (2006).   A PIP that threatens termination is plainly the type of adverse action that could deter a reasonable employee from pursuing an EEOC charge, especially when paired with a follow-up threat of termination by a date certain only a couple of weeks later.

Moreover, on its face, the PIP was not related to Spencer's noncompliance with SEPCO's vaccine mandate, and the targeted discipline was initiated by Spencer's direct management as opposed to by operation of SEPCO's generally applicable vaccine mandate.   At this early stage of the litigation, the district court erred in concluding that a reasonable worker in Spencer's position would not have been dissuaded by such a clear and overt retaliatory threat as a matter of law.

The fact that Spencer amended his EEOC Charge after receiving the PIP is also irrelevant to the "reasonable employee" analysis.   Every employee who files an EEOC Charge of Discrimination or subsequent federal lawsuit in response to retaliation is obviously not "so dissuaded" that they forgo their litigation rights.   This is presumably why the Supreme Court in *White* set an objective standard in retaliation cases versus a subjective one.   Taken to its logical conclusion, SEPCO's

argument, and the district court's rational, would lead to the absurd conclusion that no employee could ever successfully pursue a retaliation claim under Title VII because by exhausting administrative remedies or filing a federal lawsuit the employee would necessarily prove they weren't "dissuaded enough" by the retaliation to forgo complaining.

In response, on brief, SEPCO points out that this Court's so called *Gupta* exception allows a plaintiff to assert a subsequent retaliation claim in a federal lawsuit, without further exhausting the claim administratively, when the subsequent retaliation was done to punish the employee for filing an earlier EEOC Charge. *See Gupta v. E. Texas State Univ.*, 654 F.2d 411, 414 (5th Cir. 1981) (so holding). This argument is too clever by half. This Court in *Gupta* and its progeny didn't hold that a Title VII plaintiff who wishes to press a claim for subsequent retaliation must not have been "so dissuaded" by the retaliation in the first place, nor did the Court hold that a Title VII plaintiff isn't permitted to administratively amend a current Charge to allege further retaliation. Instead, this Court simply held that a federal district court has ancillary jurisdiction over subsequent retaliation claims that arise from an earlier Charge to prevent the accumulation of "additional procedural

technicalities when a single filing would comply with the intent of Title VII." *Gupta*, 654 F.2d at 414.

SEPCO and the district court likewise diminished the significance of the close timing between Spencer's EEOC filing and management's adverse actions by arguing Spencer was already subject to termination due to his noncompliance with the vaccine mandate. This argument fails to account for the broader context. Although Spencer had been noncompliant with the mandate since January 2022, SEPCO did not take any active steps to enforce termination until May 3, 2022 – just four weeks after Spencer filed his EEOC Charge in April 2022. ROA.94. This close timing between Spencer's protected complaint and SEPCO's adverse action underscores the plausibility of SEPCO's retaliatory motivation. Timing matters most in retaliation cases, and the abrupt shift in management's enforcement posture immediately after Spencer's protected activity again plausibly suggests retaliation.

Indeed, because Spencer was always an at-will employee, SEPCO had the authority to terminate him for any non-illegal reason, at any time, vaccine-related or otherwise. Yet SEPCO chose not to act against Spencer for four months while Spencer remained noncompliant with the

vaccine mandate. It was only after Spencer filed his EEOC Charge that SEPCO placed Spencer on a PIP and gave him a date-certain for his termination. This again plausibly suggests retaliatory motivation at the preliminary stage of the case, and the district court erred by holding otherwise.

Finally, SEPCO also argues, and the district court agreed, that Spencer failed to establish retaliatory causation. This is incorrect – at least at this stage of the case. The temporal proximity between Spencer's EEOC filing and SEPCO's adverse actions – only three to four weeks – is sufficient to satisfy the less onerous prima facie burden of causation in retaliation cases. "The burden of establishing the 'causal link' in the prima facie case is much less onerous than the burden of proving 'but-for' causation required for the determination of the ultimate issue of retaliation. *Sherrod v. American Airlines, Inc.*, 132 F.3d 1112, 1122 n. 8 (5th Cir. 1998). And this Court has previously held a timespan of up to four months between protected activity and adverse action may be sufficient to satisfy this initial, less onerous causation standard in retaliation cases. *Feist*, 730 F.3d at 453 (a "time lapse of up to four months may be sufficiently close"). The district court erred in dismissing

Spencer's retaliation claim at the preliminary stage of the case based on the idea plaintiff failed to plausibly allege retaliatory causation.

**3.  Plaintiff should have been offered at least one chance to amend given the parties' back and forth attempts to introduce new evidence and allegations in the case**

Finally, Spencer's original complaint, while sufficiently plausible to survive dismissal on its own, could have been bolstered by additional factual allegations if the district court had offered the chance to amend. The Fifth Circuit has long recognized the principle that plaintiffs should be given at least one opportunity to amend their complaint, after being put on notice of his purported inadequacy, unless amendment would be futile. *See Great Plains Tr. Co. v. Morgan Stanley Dean Witter & Co.*, 313 F.3d 305, 329 (5th Cir. 2002). Here, the district court improperly foreclosed this opportunity, depriving Spencer of the chance to plead his "best case."

On brief, SEPCO argues that Spencer, through his lawyer, had 10 months' lag time between defendant's motion to dismiss and the district court's order dismissing the case. That's true, but that also misses the point. Plaintiff presumably believed the allegations in his complaint were sufficient to plead a plausible case for Title VII liability – that's why

plaintiff filed an opposition brief to defendant's motion to dismiss. The first time plaintiff had real notice that the district court disagreed was when the district court dismissed plaintiff's case. *Dark v. Potter*, 293 Fed. Appx. 254, 257 (5th Cir. 2008) ("this court often assumes a plaintiff asserts its best case after the plaintiff is apprised of the insufficiency of the complaint") (internal quotations omitted).

SEPCO argues plaintiff shouldn't be rewarded now when he failed to explicitly request leave to amend. But, strictly speaking, Federal Rule 15 doesn't textually require a request to amend as a pre-condition of offering leave. Instead, "The court should freely give leave when justice so requires." Fed. R. Civ. P. 15(a)(2). Spencer argues justice so requires given the procedural history in this case.

To be sure, Spencer isn't suggesting a one-size-fits-all rule requiring a district court to always offer a chance to amend before dismissal – this Court has often said that a plaintiff represented by counsel should generally ask for leave to amend, and that rule makes sense in the general run of cases.

What distinguishes this case from the general run is that ***both*** parties introduced ***significant*** additional allegations and purported

evidence beyond the pleadings in response to plaintiff's complaint. Both sides were clearly trying to beef up their respective pleadings to state their best case. Defendant introduced 16 pages of new evidence across seven individuals exhibits in support of their motion to dismiss. *See* ROA.78-94. Plaintiff responded by making several new allegations in his opposition briefing trying to meet defendant's proffer head on. In its order and reasons, the district court appeared to at least acknowledge some of these additional allegations. Everything about the proceedings below strongly suggest plaintiff has not yet plead his best case, and certainly enough so that the district court had reasonable notice that the plaintiff could amend if given the chance.

Otherwise, SEPCO argues this Court should disregard the proffer of additional allegations Spencer would make to the district court if given the opportunity to do so. But what was Spencer to do on this appeal? He entered his appearance *pro se* after his first attorney lost his motion to dismiss. ROA.148-151. And once Spencer timely filed his notice of appeal, this Court took jurisdiction of the case from the district court, precluding Spencer from seeking any post-dismissal leave to amend from the district court until this appeal was resolved. *See generally In re Fort*

*Worth Chamber of Commerce*, 100 F.4th 528, 532 (5th Cir. 2024) ("If there is an appealable order, the appeal divests the district court of jurisdiction over those aspects of the case on appeal") (internal quotations omitted).

Likewise, if Spencer hadn't proffered his intended allegations here, that alone would be a sufficient basis to deny any opportunity to amend. *See e.g.*, *Douglas v. DePhillips*, 740 Fed.Appx. 403, 406 (5th Cir. 2018) (affirming district court's denial of leave to amend because the plaintiff did not "set for with sufficient particularity the grounds for the amendment").

In any event, Spencer's proffer exactly fleshes out his best case. Spencer's allegations fill in the gaps of his complaint and make clear that SEPCO arbitrarily applied its off-shore COVID-19 vaccine mandate to him and failed to provide Spencer with the most obvious of reasonable accommodations – continuing doing his job as he had always done both before and after the availability of SARS-CoV-2 vaccinations (with or without adhering to SEPCO's prior non-vaccination safety protocols). If that wasn't sufficient, Spencer proffered the allegation here that he was willing to engage in any number of safety precautions designed to ensure the health and safety of hm and his colleagues.

13

Spencer's proffer also makes clear that SEPCO's purported accommodation – a stretch of time to find another job or be fired – was a sham. Spencer proffered the allegation that there were no other jobs available to him at the time, and that SEPCO's "accommodation" was simply a pretext to terminate its employees who were religious objectors. Spencer's proffer also confirms that he was an excellent employee who didn't engage in the misconduct that SEPCO accused him of in its pretextual PIP.

Finally, and perhaps most probative of all, Spencer's proffer alleges that after he was forced to quit his job at SEPCO and began working at Shell Pipeline Company, he was routinely ordered to fly to offshore SEPCO assets on SEPCO helicopters – without vaccination! – and no one from SEPCO objected. In other words, Spencer's proffered allegations paint the quintessential picture of a sham policy meant to give pretextual cover from Title VII liability.

Ultimately, Tim Spencer – the real man behind the plaintiff – did everything the Court would expect him to do to protect his Title VII rights in this case. He timely filed an original and amended EEOC Charge of Discrimination. He partially mitigated his losses by finding replacement

employment after he was forced to resign (albeit a lower paying job with less prestigious responsibilities). He hired an attorney. When his attorney lost his motion to dismiss, Spencer continued on *pro se* and timely filed a notice of appeal with this Court. Spencer then hired new counsel to prosecute this appeal. Spencer, through counsel, has alerted the Court to the allegations that do make out his "best case."

If this Court is unsatisfied that Spencer's original, federal complaint plausibly alleged Title VII liability in the case, then either as a matter of law or equity, Spencer simply asks for the opportunity to return to the district court to amend his complaint and set out his best case.

## Conclusion

For all these reasons, plaintiff-appellant Tim Spencer respectfully asks the Court to reverse the order of the district court dismissing Spencer's claims in this case with prejudice and remand with instructions to grant him leave to amend his complaint.

Respectfully submitted:

/s/ Kevin S. Vogeltanz
Kevin S. Vogeltanz (Bar #32746)
Law Office of Kevin S. Vogeltanz, LLC
428 W. 21st Ave. / Covington, LA 70433
Office: (504) 275-5149
Fax: (504) 910-1704
Email: vogeltanz@gmail.com

*Attorney for Appellant Tim Spencer*

## CERTIFICATE OF SERVICE

Pursuant to Fed. R. App. P. 25 and Fifth Circuit Rule 25.2.5, I, Kevin S. Vogeltanz, certify that on November 19, 2024 I filed appellant's reply brief via the Court's CM/ECF system. To the best of my knowledge, all parties in this case are represented by attorneys who are registered Filing Users in this case and who will receive notice through the Court's CM/ECF system.

/s/ Kevin S. Vogeltanz
Kevin S. Vogeltanz (Bar #32746)
Law Office of Kevin S. Vogeltanz, LLC
428 W. 21st Ave. / Covington, LA 70443
Office: (504) 275-5149
Fax: (504) 910-1704
Email: vogeltanz@gmail.com

*Attorney for Appellant Tim Spencer*

# CERTIFICATE OF COMPLIANCE

Pursuant to 5th Cir. R. 32.3, I hereby certify that this brief complies with the type-volume limitations of 5th Cir. R. 32.2 and Fed. R. App. P. 32(a)(7)(b) because: excluding the parts of the document exempted by Fed. R. App. P. 32(f), this document contains 2,920 words.

This document complies with the typeface requirements of Fed. R. App. P. 32(a)(5) and the type-style requirements of Fed. R. App. P. 32(a)(6) because: this document has been prepared in a proportionally spaced typeface using Microsoft Word for Mac, version 16.54, in Century Schoolbook font, with 14-point font for text.

/s/ Kevin S. Vogeltanz
Kevin S. Vogeltanz (Bar #32746)
Law Office of Kevin S. Vogeltanz, LLC
428 W. 21st Ave. / Covington, LA 70443
Office: (504) 275-5149
Fax: (504) 910-1704
Email: vogeltanz@gmail.com

*Attorney for Appellant Tim Spencer*

18